732 A.2d 457

BARBARA CHASIN, PLAINTIFF–APPELLANT AND CROSS–RE-
SPONDENT, v. MONTCLAIR STATE UNIVERSITY, THE STATE
OF NEW JERSEY AND PETER VERNIERO, ATTORNEY GEN-
ERAL, DEFENDANTS–RESPONDENTS AND CROSS–APPEL-
LANTS.

Argued October 13, 1998—Decided June 2, 1999.

420

*Andrew W. Dwyer,* argued the cause for appellant and cross-respondent (*Reinhardt & Schachter,* attorneys).

*Jeffrey J. Miller,* Assistant Attorney General, argued the cause for respondents and cross-appellants (*Peter Verniero,* Attorney General of the State of New Jersey, attorney; *Joseph L. Yannotti,*

Assistant Attorney General, of counsel; *Valerie L. Egar,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal involves the interpretation of the provisions of the Tort Claims Act ("TCA"), *N.J.S.A.* 59:1–1 to –14–4, that govern the State's obligations to defend and indemnify its employees in lawsuits brought against them. Specifically, does the TCA oblige the State to defend and indemnify plaintiff, Barbara Chasin, a professor at Montclair State University, in an underlying suit that did not seek damages for tortious conduct? We also consider whether Professor Chasin's refusal to follow the legal advice of the Attorney General justifies the State's refusal to indemnify her. Finally, we determine whether *N.J.S.A.* 18A:60–4 requires the State to defend and indemnify plaintiff.

I.

Professor Barbara Chasin teaches sociology at Montclair State University. In the fall of 1990, James Lloyd enrolled in Chasin's course on the "Sociology of Rich and Poor Nations." Lloyd was a member of the Marine Reserves. Thirteen weeks into the semester, he was called to active duty as a part of Operation Desert Storm/Shield. At that time, Lloyd had achieved an "A" average, based on a quiz and the mid-term examination. Prior to leaving campus, Lloyd met with Chasin and signed an "Incomplete Contract" in which he agreed to take a make-up final examination or write a paper to complete the course.

While Lloyd was on active duty, the Legislature enacted *L.* 1991 *ch.* 167, ("Desert Storm Law"), which provides academic relief for students called to military service in the Gulf War. The Act provides:

1. A student who is a member of the New Jersey National Guard or of the Reserve component of the Armed Forces of the United States, and who is unable to complete a course or courses at a New Jersey institution of higher education

because the student is called to active duty in consequence of the current United Nations action in the Persian Gulf known as operation "Desert Shield" or "Desert Storm," shall be entitled to receive a grade in each course for which the student has completed a minimum of 8 weeks' attendance and all other academic requirements during that period. The grade shall be based on the work completed up to the time when the student was called to active service.

On his return, Lloyd requested that Chasin award him a grade for his course work and mailed Chasin a copy of the Desert Storm Law. Chasin refused and gave Lloyd an "Incomplete." On October 14, 1991, the University Provost sent Chasin a memorandum urging that she reconsider her decision to deny Lloyd a grade:

I believe that you have asked that Mr. Lloyd fulfill the terms of the incomplete contract entered into in December 1990 or, alternatively, you will give him an F. I urge you to read carefully the attached copy of the law.... Our efforts to change the legislation were unsuccessful and the bill was signed into law on June 19, 1991. I appreciate your concerns and understand the position you have taken. But, as employees of the State of New Jersey we have an obligation to obey the laws enacted by the legislature. I hope that you will agree.

The Provost's position was clear. He expressed sympathy for Chasin's position, but felt that she was obliged to "obey" the Law.

Chasin still refused to give Lloyd a grade. In fact, Chasin wrote a letter on October 25, 1991, to Montclair State's President, Irving D. Reid, in an attempt to solicit his support. Although she asserted her position was consistent with the statute, Chasin premised that conclusion on her own belief that to comply with the Law as written would be:

to take arbitrary and standardless action in assigning a grade. This would undermine the credibility and validity of Montclair State College as an academic institution. . I do not believe that the New Jersey state legislature intended such a result in writing this law. In its attempt to 'protect' the participants in the Persian Gulf by this law, the legislature paid insufficient attention to the distinct character of higher education.

Chasin's language in the letter, "*I* do not believe that the New Jersey state legislature intended...." and "the legislature *paid* insufficient attention ...," indicates that Chasin knew her position contradicted the Desert Storm Law. Chasin understood the law, and simply disagreed with it.

Early in the fall of 1991, Lloyd unsuccessfully sought administrative relief from the University Grade Grievance Committee.

Deputy Attorney General Grey DiMenna appeared at the Committee's organization meeting, and, according to Chasin's counsel, "tried to imprint [the college administration and Attorney General's] view on the Committee ... in light of a narrow view of the 'Desert Storm' legislation." Chasin's counsel also maintained that, "... injecting a legal issue at this early stage of the proceeding is prejudicial." In her statement to the Committee, Chasin did not claim that her position was consistent with the statute. The Committee, however, expressed its reluctance to substitute its judgment for Chasin's and the University Provost upheld that ruling.

The dissent relies heavily on the Provost's failure to award a grade as evidence that he supported Chasin's interpretation of the statute. *Post* at 458, 732 *A.*2d at 479 (Stein, J., dissenting). Under Montclair State's Grade Grievance Procedure, however, the Provost is prohibited from changing a grade or ordering a Professor to change a grade. Instead, the Provost may only recommend that the grade be altered. Faced with Chasin's adamant refusal to acknowledge the plain language of the statute, the Provost may well have upheld the grade in an effort to influence Lloyd's position and avoid further dispute with Chasin.

In July 1992, Lloyd filed suit in the Chancery Division against Chasin, the University, and the Provost of the University to compel them to comply with the Desert Storm Law. Specifically, he sought equitable relief—the award of a grade pursuant to the Desert Storm Law. He also sought exemplary damages from the Provost of the University and Chasin for their "intentional, wanton and malicious failure to abide by the duly enacted law of the State of New Jersey." On receipt of the complaint, Chasin sent a formal request for defense and indemnification to the Attorney General, who rejected Chasin's request. The Attorney General's decision was "based upon the actions of Professor Chasin with regard to this matter and the Attorney General's discretion pursuant to *N.J.S.A.* 59:10A–2 to refuse such representation."

The Chancery Division suit was dismissed because Lloyd failed to exhaust his administrative remedies, and the matter was sent to the Office of Administrative Law for a hearing. Before a hearing was held, the case settled. The initial decision of the Administrative Law Judge ("ALJ") approving the settlement characterizes Lloyd's petition as "seeking to compel compliance with *L.*1991 *c.*167." Neither the decision nor the stipulation of settlement mentions a claim for damages. Lloyd received a grade, but his transcript was annotated to indicate that the grade was administratively awarded. In exchange, Lloyd dropped the pending claims against Chasin, the University Provost, and the University.

Immediately after the settlement and pursuant to the TCA, Chasin sent the Attorney General a Demand for Indemnification. The Attorney General did not respond. In July 1995, Chasin filed suit against the State of New Jersey, the Attorney General, and Montclair State University seeking reimbursement for $12,216 in legal fees she incurred defending the Chancery and Administrative actions. In her complaint, Chasin alleged that Lloyd's administrative petition sought compliance with the statute and damages. The Attorney General's answer expressly denied that the petition sought any damages. The Law Division granted Chasin summary judgment. The court specifically found that the function of the Attorney General was to provide advice that a state employee was free to follow or disregard. The court further concluded that Chasin had acted in good faith and awarded her $12,216 in attorney's fees. The State moved for reconsideration of the ruling, and Chasin moved for an additional award of fees to cover the cost of the indemnification action. The court denied the State's motion, but granted Chasin an additional $10,000 in attorney's fees.

The Appellate Division reversed and remanded for a plenary hearing to determine the circumstances under which the Attorney General provided advice to Chasin. The court rejected both the Law Division's conclusion that a state employee is free to disregard the Attorney General's legal position, and the State's conten-

tion that Chasin was not entitled to indemnification under the TCA because Lloyd's suit did not seek compensatory damages for tortious behavior. The court found that the Attorney General's legal position was binding on state employees and that the TCA applied to actions for equitable relief. Within that framework, the court focused on whether Chasin knowingly disregarded the Attorney General's advice, and therefore, acted outside the scope of her employment. The opinion suggests that if Chasin willfully disregarded the Attorney General's advice, her actions would fall outside the scope of her employment and the State would not be required to indemnify her. The court deemed the record insufficient on this issue and ordered a remand. Both Chasin's and the Attorney General's Petitions for Certification were granted. 153 *N.J.* 49, 707 *A.*2d 152 (1998).

## II.

### A.

■ The Legislature intended the TCA to reestablish "the general rule of the immunity of public entities from liability for injuries to others." *Brooks v. Odom,* 150 *N.J.* 395, 402, 696 *A.*2d 619. The TCA was also intended to supersede the patchwork of statutory provisions providing for the defense and indemnification of state employees. *See N.J.S.A.* 59:12–2 (repealing all statutes "inconsistent" with the TCA). The TCA, therefore, provides the unified scheme under which the Attorney General's duty to defend and indemnify employees must be evaluated.

*N.J.S.A.* 59:10A–1 establishes the Attorney General's basic duty to defend state employees:

> Except as provided [in *N.J.S.A.* 59:10A–2], the Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment.

*N.J.S.A.* 59:10A–2 provides that the Attorney General may refuse to provide a defense for a state employee under *N.J.S.A.* 59:10A–1 if he determines that:

a.  the act or omission was not within the scope of employment; or

b.  the act or failure to act was because of actual fraud, willful misconduct or actual malice; or

c.  the defense of the action or proceeding by the Attorney General would create a conflict of interest between the State and the employee or former employee.

*N.J.S.A.* 59:10A–3 provides that "[i]n any *other* action or proceeding, including criminal proceedings, the Attorney General may provide for the defense of a State employee or former State employee, if he concludes that such representation is in the best interest of the State." (emphasis added.) [1]

The State's duty to indemnify an employee parallels the duty to defend. *N.J.S.A.* 59:10–1 requires the State to indemnify employees for whom a defense is provided. That section specifically exempts the State from paying "punitive or exemplary damages or damages resulting from the commission of a crime." *Ibid.* If the Attorney General refuses to defend a state employee, the State is only required to indemnify that employee if "the act or omission upon which the claim or judgement was based occurred within the scope of his employment ... and the State fails to establish ... actual fraud, actual malice or willful misconduct." *N.J.S.A.* 59:10–2. If an employee qualifies under that provision, the State is obliged to reimburse that employee for all costs, including reasonable attorneys' fees.[2] Thus, even if an employee is not provided with a defense under the TCA, that employee may recover attorneys' fees in limited circumstances.

## B.

The language of a statute must be construed according to its plain meaning, so long as that meaning comports with the statute's legislative intent. *Merin v. Maglaki*, 126 *N.J.* 430, 434–35, 599 *A.*2d 1256 (1992). Additionally, "whatever the rule of [statutory] construction, it is subordinate to the goal of effectuat-

---

[1] *N.J.S.A.* 59:10A–1, 2 and 3 will be designated as TCA defense provisions.

[2] *N.J.S.A.* 59:10–1 and 2 will be designated as TCA indemnification provisions.

ing the legislative plan as it may be gathered from the enactment read in full light of its history, purpose, and context." *State v. Haliski*, 140 *N.J.* 1, 9, 656 *A.*2d 1246 (1995) (quoting *State v. Gill*, 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966)). The limits of the TCA provisions that relate to defense and indemnification are derived from consideration of both their plain language and the history and context within which they were enacted.

*N.J.S.A.* 59:10A–1 mandates a defense in "any action," unless one of the exceptions of *N.J.S.A.* 59:10A–2 applies. Those exceptions authorize the Attorney General to refuse a defense when the act complained of falls outside the scope of employment, constitutes "actual fraud, willful misconduct, or actual malice," or creates a conflict of interest. *N.J.S.A.* 59:10A–2. The third provision governing the duty to defend, *N.J.S.A.* 59:10A–3, vests the Attorney General with the discretion to defend a state employee, "in any other action or proceeding, including criminal proceedings."

█ The Appellate Division read the plain language of *N.J.S.A.* 59:10A–1 to require a defense in "any action," regardless of the remedy sought. The court reasoned that *N.J.S.A.* 59:10A–3 merely preserves the right of the Attorney General to defend an employee in cases where a specific exception under *N.J.S.A.* 59:10A–2 applies. That right, however, is preserved by the use of the discretionary "may" rather than the directive "shall" in *N.J.S.A.* 59:10A–2: "[t]he Attorney General *may refuse* to provide for the defense ..." (emphasis added). Under the Appellate Division's construction of the TCA, *N.J.S.A.* 59:10A–3 is superfluous. It is a well-established canon of construction that

> a legislative provision should not be read in isolation or in a way which sacrifices what appears to be the scheme of the statute as a whole. Rather, a statute is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.
>
> [*Zimmerman v. Municipal Clerk of Tp. of Berkeley*, 201 *N.J.Super.* 363, 368, 493 *A.*2d 62 (App.Div.1985) (citing *Alexander v. New Jersey Power & Light Co.*, 21 *N.J.* 373, 122 *A.*2d 339 (1956)).]

*N.J.S.A.* 59:10A–1 therefore must be understood with reference to *N.J.S.A.* 59:10A–2 and –3. Given the statutory scheme and the title of the Act, *N.J.S.A.* 10A–1 mandates that the Attorney General defend "any action" brought in tort; *N.J.S.A.* 59:10A–2 specifies three instances when such representation of tort cases may be refused by the Attorney General; and *N.J.S.A.* 59:10A–3 vests the Attorney General with the discretion to defend in cases not covered by *N.J.S.A.* 59:10A–1. Because *N.J.S.A.* 59:10A–3 grants discretion "in any other action, *including* criminal proceedings" (emphasis added), that discretion cannot be *limited* to criminal proceedings, but must include some civil actions. *N.J.S.A.* 59:10A–1 requires the Attorney General to defend state employees against tort liability, so the civil claims left to *N.J.S.A.* 59:10A–3 must seek a remedy other than tort damages.

■ The history of the TCA demonstrates that it was intended to apply only to civil actions seeking damages for tortious conduct. The *Report of the Attorney General's Task Force on Sovereign Immunity* (1972) (*Task Force Report*) was submitted to the Legislature as a pre-cursor to the TCA. The Task Force Report focused on "the 'selective abolition' of the State's sovereign immunity 'in contract and tort.'" *Helduser v. Kimmelman,* 191 *N.J.Super.* 493, 508–09, 467 *A.*2d 1094 (App.Div.1983). The Task Force Report recommended that the Attorney General defend and indemnify state employees against "civil liability arising within the scope of their employment." *Task Force Report* at 15. The Task Force Report, however, focused on the recommendation that "[t]he Attorney General ... should provide for the defense of all State employees sued for negligence." *Id.* at 16. "A major premise" of the proposed TCA was to provide limited recovery for a claimant's "economic loss." *Ibid.* Numerous references to suits for negligence, civil liability, economic loss, and limited liability establish that the Task Force Report only sought to require defense and indemnity in civil actions seeking damages for tortious conduct. The language proposed to accomplish that goal was adopted by the Legislature in *N.J.S.A.* 59:10–1 to –10A–6. By

adopting the proposed sections, the Legislature manifested its intent that the TCA only apply to civil claims for compensatory damages for tortious conduct. Limiting the duty to defend to civil claims for tort damages is also consistent with the underlying legislative intent that courts make a "chary interpretation of a public entity's exposure to liability" that is called for under the TCA. *Brooks, supra,* 150 *N.J.* at 402, 696 *A.*2d 619. The legislative intent establishes that civil actions seeking tort damages are covered by the mandatory defense and indemnification provisions of the TCA. Such an interpretation gives meaning to the language "[i]n any other action ... including criminal proceedings" contained in *N.J.S.A.* 59:10A–3.[3]

This construction comports with prior defense and indemnification cases that distinguished tort actions from other suits. *See In re Napoleon,* 303 *N.J.Super.* 630, 633–34, 697 *A.*2d 574 (App.Div. 1997); *Helduser v. Kimmelman, supra,* 191 *N.J.Super.* at 503, 467 *A.*2d 1094. In *In re Napoleon, supra,* 303 *N.J.Super.* at 632, 697 *A.*2d 574, Napoleon, the Medical Director at a state prison, sought defense and indemnification from the Attorney General in a license suspension or revocation hearing before the New Jersey Board of Medical Examiners. The Attorney General rejected Napoleon's request for defense and indemnification, stating that it would be inappropriate for the Attorney General to provide a defense in a case that she had initiated before the professional board. *Id.* at 633, 697 *A.*2d 574. Moreover, the Attorney General stated that the nature of the allegations and proceedings did not obligate the Attorney General to provide a defense under *N.J.S.A.* 59:10A–1 or –3 and to indemnify Napoleon under *N.J.S.A.* 59:10–1. *Ibid.*

The Appellate Division upheld the denial, observing that "[t]he duty to defend arises in the context of actions filed in accordance

---

[3] In 1989 the TCA was amended to mandate indemnification for state officers in criminal actions when the act or omission arose out of and was directly related to the lawful exercise of official duties, and when the action is dismissed or results in a final disposition favorable to the officer. *N.J.S.A.* 59:10–2.1.

with the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to 13–10; that is, the Attorney General has a duty to defend present and former State employees *only for tortious acts.*" *Id.* at 633–34, 697 *A.*2d 574 (emphasis added). The court noted that the proceeding against Napoleon was not a civil action for damages but rather a "disciplinary hearing" before the appropriate licensing authority. *Id.* at 634, 697 *A.*2d 574. The court also observed that indemnification was properly denied because the indemnification provisions only are triggered "for damages awarded in a civil action for tortious conduct," and because Napoleon was not entitled to a defense, then necessarily he was not eligible for indemnification. *Ibid.*

*Helduser v. Kimmelman, supra,* 191 *N.J.Super.* 493, 467 *A.*2d 1094 was a consolidated appeal brought by two suspended members of the state police who were charged with crimes. Both men were acquitted and thereafter submitted requests to the Attorney General for reimbursement of their legal fees. Their requests were denied. On appeal, Helduser argued that *N.J.S.A.* 59:10A–1 requires the Attorney General to provide for a defense of a state employee in *any* action brought against that employee unless a specific exception under *N.J.S.A.* 59:10A–2 applies. *Id.* at 498, 467 *A.*2d 1094. Helduser also relied on *N.J.S.A.* 59:10–2, asserting that it mandated reimbursement for his counsel fees when the Attorney General refused to provide a defense, because the State failed to show that his conduct was motivated by actual fraud or malice. *Ibid.*

In affirming the denial of indemnification for the officers, the Appellate Division relied on the history of the TCA:

As previously stated the language of *N.J.S.A.* 59:10–1 and –2, and the statement accompanying the bill that became *N.J.S.A.* 59:10A–1 *et seq.* as well as other legislative history, about which more will be said shortly, all indicate that the indemnification provisions in *N.J.S.A.* 59:10–1 and –2 *apply only to civil actions for damages based upon an employee's tortious conduct.* Similarly, *N.J.S.A.* 59:10A–1 and –2 were intended to govern the Attorney General's duty to defend state employees in civil actions. The reference in *N.J.S.A.* 59:10A–3 to "any other action or proceeding, including criminal proceedings," was simply to preserve the Attor-

ney General's prior statutory and inherent authority to represent or furnish a defense for state employees.

[*Id.* at 507, 467 A.2d 1094 (emphasis added)]

In discussing *N.J.S.A.* 59:10A–3, the court further observed:

More likely, the reference to "any other action or proceeding" was simply a catchall to cover actions not arising under the Tort Claims Act, including civil actions not seeking damages, as well as criminal actions, in which the Attorney General should have discretionary authority to furnish a defense for a state employee when the state interest would be served.

[*Id.* at 508, 467 A.2d 1094]

Thus, both *Napoleon* and *Helduser* stand for the proposition that the Attorney General's obligation to defend and indemnify arises only in the context of civil actions seeking damages for tortious conduct. We agree that the mandatory defense and indemnification provisions apply only to those civil actions. The defense of any other action is left to the Attorney General's discretion.

## III.

In this case, Lloyd's underlying suit sought primarily injunctive relief. Claims of this type are not encompassed by the mandatory defense provision of the TCA. This conclusion is unaffected by Lloyd's ancillary request for exemplary damages which he dropped when he sought administrative relief after his suit was dismissed by the Chancery Division. In any case, Lloyd's request for exemplary damages does not alter the fundamental nature of his claim. *Cf. Shaner v. Horizon Bancorp.*, 116 *N.J.* 433, 450–51, 561 A.2d 1130 (1989) (observing that we consider the nature of the underlying controversy as well as the remedy sought in determining whether the cause of action has been historically primarily equitable on legal in nature).

In an attempt to shoehorn Chasin's indemnification claim into the TCA, the dissent argues that Lloyd's suit against Chasin was a tort action. *Post* at 456–57, 732 A.2d at 478–79 (Stein, J., dissenting). Lloyd filed suit in the Chancery Division, which handles primarily equitable claims. The ALJ's initial decision and the

stipulation of settlement do not mention any claim for damages. The Attorney General's answer in this case expressly denies that the administrative petition sought damages. Implicitly acknowledging that Lloyd's claim was equitable, the Appellate Division extended the coverage of the TCA to "any" civil action. Chasin relied on that position in her submissions to this Court; nowhere does she suggest that Lloyd's claim sounded in tort. Neither the parties nor any court involved in this action ever considered Lloyd's claim as anything other than equitable; the dissent is utterly alone in taking this unsupported position.

Because Chasin was not entitled to a defense under *N.J.S.A.* 59:10A–1, she also cannot receive indemnification. The remaining indemnification provisions of the TCA are similarly inapplicable to this case. *N.J.S.A.* 59:10–2 requires the State to indemnify an employee when the Attorney General refuses to defend an action where *N.J.S.A.* 59:10A–1 entitles the employee to a defense, and the employee demonstrates that the action taken was within the scope of employment, and not the result of willful misconduct, actual fraud or actual malice. That provision, however, applies only when the underlying claim is a civil action for damages. The proof required for indemnification parallels the first two exceptions to the defense provision, listed in *N.J.S.A.* 59:10A–2. In other words, the statute requires the State to indemnify an employee who demonstrates that the first two exceptions of *N.J.S.A.* 59:10A–2 do not apply, and whom the Attorney General refused to defend. That category of employees would include those refused a defense under the third exception, a conflict of interest, and those mistakenly refused a defense because the Attorney General erroneously applied one of the first two exceptions.

To summarize, *N.J.S.A.* 59:10–2 requires the State to indemnify an employee in a *N.J.S.A.* 59:10A–1 action that the Attorney General fails to defend. The TCA, therefore, indemnifies employees refused a defense only when the underlying claim is a civil action seeking damages in tort. Because Lloyd's claim

against Chasin sought injunctive relief, it was outside the scope of *N.J.S.A.* 59:10–2. Accordingly, the TCA does not require the Attorney General to defend Chasin, and thus, cannot require the State to indemnify her.

## IV.

■ The Appellate Division concluded that a state employee seeking to have the Attorney General defend or indemnify her is not free to disregard the Attorney General's advice. We agree. Therefore, even if Chasin's claims could be considered under the TCA, an argument we reject, her willful disregard of the Attorney General's legal position would forfeit any right to defense and indemnification. In cases where a defense is provided, the TCA expressly grants the Attorney General "exclusive control" of the representation and requires the employee to "cooperate fully with the Attorney General's defense." *N.J.S.A.* 59:10A–4. The official comment to the related indemnification provision make it plain that the Legislature intended the Attorney General's advice to bind employees: "In order to insure that the State's interest will be adequately protected it is provided that a State employee shall not be entitled to indemnification ... unless he cooperates fully with any defense provided by the Attorney General." Comment to *N.J.S.A.* 59:10–3. Similarly, the discretionary defense provision authorizes the Attorney General to defend state employees in criminal cases or civil cases not seeking damages when a defense is "in the best interest of the State." *N.J.S.A.* 59:10A–3.

Both Lloyd and the University Provost provided Chasin with a copy of the Desert Storm Law. The Provost also urged the Professor to "read carefully the attached copy of the law." After noting that the University had opposed the Law and expressing sympathy for the Professor's position, the Provost stated that "as employees of the State of New Jersey we have an obligation to obey the laws enacted by the legislature. I hope that you will agree." In a letter to the University President dated October 25, 1991, Chasin asserted that her position was "consistent" with the

Desert Storm Law. Her letter also said, "I do not believe the Legislature intended [to require the award of a grade without further testing] in writing this law. . . . The law specifically requires that the grade *be based upon the work which the student had completed up to the time when the student was called to active service.* Mr. Lloyd has not provided evidence as to how he has completed that work."

Despite her assertion to the contrary, Chasin's own arguments demonstrate that her position was not "consistent" with the Desert Storm Law. As the dissent notes, Chasin sought "some form of demonstration from [the student] that he has learned the material . . . a take-home final or paper." *Post* at 444, 732 *A.*2d at 471 (O'Hern, J., dissenting). Paradoxically, Chasin asserts that completing this requirement would not constitute additional work. Even if Lloyd could have provided a sufficient "demonstration" without substantial studying, he would still have been forced to produce a paper not required of any other student. It defies logic to contend that such a paper or take-home exam would not constitute additional work.

Chasin sought to base Lloyd's grade on work produced after Lloyd was called to active service, because she did not "believe" that the Legislature meant what it said. In her Statement to the Grade Grievance Committee, Chasin contended that "it would be a violation of accepted academic principles to assign a grade to Mr. Lloyd . . ." and that "[a]cademic freedom, in this case, means that a faculty member has the right, according to long accepted procedures, of deciding how students shall be evaluated in a course." Although Chasin again stated that Lloyd had produced no evidence of having mastered the information covered between the midterm and his departure, she did not re-assert that requiring such evidence was consistent with the Law. On the contrary, Chasin informed the Committee, "I am willing to excuse Mr. Lloyd from assignments after Dec. 4 until the end of the semester . . . I consider my proposal very reasonable and flexible. . . ." Chasin apparently considered "excusing" Lloyd from assignments

undisputedly covered by the Law discretionary, a part of a "reasonable and flexible" proposal. She relied on concerns for academic freedom and political objections to the Law to support her refusal to award a grade. Although she is entitled to those views, it was evident that Chasin's position was contrary to the express language of the Desert Storm Law.

It is equally clear that Chasin was aware of the Attorney General's belief that the Desert Storm Law required her to award a grade. Deputy Attorney General Grey Dimenna alleges that he had several conversations with Chasin's counsel informing him of her duties under the statute. Dimenna also appeared at the meeting of the University's Grade Grievance Committee. A letter from Professor Chasin's counsel to Professor Catherine Becker, President of the Montclair State Federation of College Teachers, noted that Dimenna appeared at the hearing and "tried to imprint [the administration's] view on the Committee as [sic] what the final determination should be *in light of a narrow view of the 'Desert Storm' legislation.*" In view of such an admission, Cha-. sin's contention that she was unaware of the Attorney General's interpretation of the Desert Storm Law is difficult to credit. In a situation where a state employee's actions are obviously at odds with the express language of a valid statute, and the Attorney General informs the employee of her duties, that advice cannot be considered advisory.

We find no merit in the dissent's suggestion that Chasin was somehow misled by the Attorney General's Office, another assertion that Chasin never made. *Post* at 462, 732 *A*.2d at 482 (Stein, J., dissenting). An objective reading of the record discloses that from Chasin's initial refusal to give Lloyd his grade, she knew of the requirements of the Desert Storm Law, and simply refused to follow them. *Ante* at 421–23, 433–35, 732 *A*.2d at 458–59, 465–66. Likewise, it is clear that before Lloyd filed his suit, as early as the Grievance Committee Meeting, Deputy Attorney General Grey Dimenna advised Chasin that her position was inconsistent with the Law. *Ante* at 423, 732 *A*.2d at 459. Although in hindsight it

would have been better if Deputy Attorney General Dimenna had communicated the State's position in writing to Chasin and the Grievance Committee, all the parties, including Chasin and her attorney, understood the State's position. A fair reading of the record discloses that Chasin was informed of the Attorney General's legal position prior to Lloyd's filing his suit. She had sufficient time to change her position on the Desert Storn Law but refused. Indeed, at any time during the proceedings, Chasin could have withdrawn from the suit. She chose not.

■ Chasin's knowing disregard and failure to heed the express language of a valid statute and the legal position of the Attorney General forfeits her right to indemnification. If a state employee is free to disregard the legal position of the Attorney General and still be indemnified, then the exercise of the Attorney General's discretion is severely constrained. An employee could force the State to fund a defense that the Attorney General rejected as adverse to state interests. That result would subvert the goals of the Legislature. The advice of the Attorney General must be considered binding on state employees.[4]

We affirm the Appellate Division's conclusion that an employee must follow the Attorney General's advice, but because we conclude that Professor Chasin was not entitled to indemnification under the TCA, no remand is necessary.

## V.

Chasin also asserts that *N.J.S.A.* 18A:60-4 requires that the State indemnify her for her legal expenses. That statute provides, in pertinent part:

---

[4] We observe, however, that we do not decide the right to indemnification of an employee who, initially refused indemnification for disregarding the legal position of the Attorney General, prevails in a court action that finds the employee's legal position to be correct and the Attorney General's position to be wrong.

Whenever any civil action has been or shall be brought against any professor ... employed in a teaching capacity ... by any other institution of higher education ... for any act or omission arising out of and in the course of the performance of the duties of such office, position or employment, the state shall defray all costs of defending such action, including reasonable counsel fees and expenses ...

■ *N.J.S.A.* 18A:60–4 was enacted prior to the TCA. The Legislature expressly repealed the statute on July 1, 1994, as a part of the Higher Education Restructing Act of 1994. *L.* 1994, *c.* 48, § 308. That express repeal of *N.J.S.A.* 18A:60–4 does not eliminate Chasin's claim for indemnification. However, because *N.J.S.A.* 18A:60–4 was impliedly repealed by the passage of the TCA in 1972, Chasin's claim is eliminated.

In *Kemp by Wright v. State,* 147 *N.J.* 294, 305–06, 687 *A.*2d 715 (1997), we addressed whether preexisting statutes that are not expressly repealed in TCA may be impliedly repealed by the enactment of the TCA. In that case, we held that a preexisting statute, *N.J.S.A.* 26:11–12, which granted good faith immunity to county boards of health and their agents, was impliedly repealed by the enactment in 1972 of the TCA. We further found that the express repeal of *N.J.S.A.* 26:11–12 in 1976 was not inconsistent with holding that that statute had been impliedly repealed by the TCA in 1972.

To reach those conclusions, we examined the "Legislature's intention regarding the TCA's effect on preexisting statutes." *Ibid.* We began by examining the language of *N.J.S.A.* 59:12–2 that provides:

All acts or parts of acts inconsistent with [the Tort Claims Act] are, to the extent of such inconsistency, repealed, including without limitation:

P.L.1971, c. 199, s. 26 (C. 40A:12–26).

N.J.S. 18A:20–35

N.J.S. 38A:4–9

N.J.S. 38A:4–10

R.S. 53:1–22

[*N.J.S.A.* 59:12–2]

We noted that it "is significant that *N.J.S.A.* 59:12–2's list of expressly repealed statutes is inclusive rather than exclusive." *Id.* at 305, 687 *A.*2d 715. We considered the words "without limita-

tion" and found that that language authorized the "implied repeal of all unenumerated statutes that are 'inconsistent' with the [Tort Claims Act.]" That a statute was not specifically enumerated in the repealer provision does not foreclose the possibility that it was repealed. *Id.* at 305–07, 687 *A.*2d 715 (citing numerous cases where pre-existing TCA statutes not enumerated in *N.J.S.A.* 59:12–2 were repealed by the enactment of the TCA.) Although implied repeals are not favored, if the subsequent act is "fatally inconsistent" with the prior act, the prior act must yield. *Id.* at 306–07, 687 *A.*2d 715.

The legislative history of *N.J.S.A.* 59:12–2 supports the State's position that *N.J.S.A.* 18A:60–4 is "fatally inconsistent" with the TCA. That legislative history discloses that the TCA was intended to eliminate the patchwork of provisions governing the general liability of state employees. The Task Force Report cited *N.J.S.A.* 18A:60–4 and a number of other pre-TCA statutes, and observed "[i]t is apparent that the pattern of immunity established by statute is completely lacking in uniformity and fails to take into consideration many other State employees subjected to the type of liability against which the above statutes have been directed." *Task Force Report* 37–38.

We disagree with Chasin and the assertion of the dissent that *N.J.S.A.* 18A:60–4 is consistent with the Attorney General's discretion under *N.J.S.A.* 59:10A–3. *Post* at 446, 732 *A.*2d at 472 (O'Hern, J., dissenting). In particular, the dissent relies on previous precedent preserving pre-TCA statutes obligating local authorities to indemnify local employees. *See Bower v. Bd. of Educ.,* 149 *N.J.* 416, 423–31, 694 *A.*2d 543 (1997) (affirming indemnification under *N.J.S.A.* 18A:16–6 and 18A:16–6.1); *Lameiro v. West New York Bd. of Educ.,* 136 *N.J.Super.* 585, 589–91, 347 *A.*2d 377 (Law Div.1975)(rejecting implied repeal of *N.J.S.A.* 18A:16–6 by TCA). Those cases addressed *N.J.S.A.* 59:10–4, which grants local authorities the power to indemnify local employees. Statutes requiring local authorities to indemnify local officials do not conflict with statutes granting the power to indem-

nify. The stated intent underlying *N.J.S.A.* 59:10–4 is "not ... to indemnify persons who are not traditionally considered the State's employees but it is the position of the Legislature that indemnification of all public employees should be encouraged." Comment to *N.J.S.A.* 59:10–4. Thus, mandatory indemnification at the local level by a municipality does not conflict with the TCA, which sought to transfer responsibility for and encourage indemnification of municipal employees.

On the other hand, *N.J.S.A.* 59:10A–3 commends the Attorney General to defend a state employee in civil actions not seeking damages and criminal cases when in "the best interest of the State." That standard is fundamentally inconsistent with requiring the Attorney General to defend professors at state universities who knowingly disregard the statutory mandates of the Legislature. Unlike the statutes involved in the cases cited by Chasin, *N.J.S.A.* 18A:60–4 is "fatally inconsistent" with the TCA, because it requires the Attorney General to defend a professor at a state university, even in actions for injunctive relief that are not "in the best interest of the State."

The dissent maintains that *N.J.S.A.* 18A:60–4 merely requires the reimbursement of counsel fees, and is not "fatally inconsistent" with the TCA. *Post* at 462, 732 *A.*2d at 481 (Stein, J., dissenting). That position represents a critical misreading of both statutes. *N.J.S.A.* 18A:60–4 not only requires the reimbursement of counsel fees, but also requires the State to "save harmless" a professor from "any financial loss." The inconsistency between these two requirements is self-evident. Further, the contention that the education law "does not even involve the Attorney General's office" appears to be based on *N.J.S.A.* 18A:60–4's use of the words "the State shall defray all costs ..." *Post* at 462, 732 *A.*2d at 481 (Stein, J., dissenting). Nearly every indemnification provision in the TCA uses similar language; no one would contend that those provisions do not "involve the Attorney General's office." *See, e.g., N.J.S.A.* 59:10–1 ("the State shall provide indemnification...."); *N.J.S.A.* 59:10–2 ("the State shall pay or reimburse

him . . . ."); *N.J.S.A.* 59:10–2.1 ("the State shall reimburse the officer . . . .").

Further, as in *Kemp,* the later express repeal of *N.J.S.A.* 18A:60–4, in the Higher Education Restructuring Act of 1994, is consistent with our holding that *N.J.S.A.* 18A:60–4 was implicitly repealed by the TCA. The legislative history of the Higher Education Restructuring Act of 1994, *L.* 1994, *c.* 48, ¶ 307, effective July 1, 1994, which repealed *N.J.S.A.* 18A:60–4, illustrates this. The Senate Education Committee's Statement accompanying the Restructuring Act specifically addresses a number of statutes and then states "[t]he remaining repealed sections are those statutes which are no longer operative." Because no mention of *N.J.S.A.* 18A:60–4 appears prior to that passage, the Legislature seems to have believed that *N.J.S.A.* 18A:60–4 was "no longer operative."

Chasin reads the legislative history differently, concluding that *N.J.S.A.* 18A:60–4 was repealed to be replaced by a new statute, *N.J.S.A.* 18A:3B–6(h). That statute provides that each state university or college

> shall elect within 75 days of the effective date of this act whether it, and its employees, shall be represented in all such matters by the Attorney General. If the institution elects not to be represented by the Attorney General, it shall be considered and its employees considered employees of a sue and be sued entity for the purposes of the "New Jersey Tort Claims Act" only. The institution shall be required in that circumstance to provide its employees with defense and indemnification consistent with the terms and conditions of the Tort Claims Act in lieu of the defense and indemnification that such employees would otherwise seek and be entitled to from the Attorney General.
>
> [*N.J.S.A.* 18A:3B–6(h) ]

Chasin reasons that the Legislature's decision to replace *N.J.S.A.* 18A:60–4 with a comparable provision militates against the conclusion that the statute was repealed by the TCA. The new statute does not, however, replace the old one. Instead, it binds either the Attorney General or the University to defend and indemnify employees to the extent required by the TCA, and *not* *N.J.S.A.* 18A:60–4. If Professor Chasin's reasoning were correct, a comparable provision would have defined the duty to indemnify with a reference to *N.J.S.A.* 18A:60–4 and not the TCA. Instead,

this new statutory scheme suggests that the Legislature believed *N.J.S.A.* 18A:60-4 inoperative to the extent that it required a defense not countenanced by the TCA. The new statute was intended to introduce a measure of autonomy into the defense and indemnification of state universities and their employees by preserving the right to seek outside counsel. It was not meant to alter the duty to indemnify an employee. Thus, the reference to the TCA in *N.J.S.A.* 18A:3b-6(h) supports the conclusion that the Legislature viewed *N.J.S.A.* 18A:60-4 as inoperative. We find ample evidence that the State's duties under *N.J.S.A.* 18A:60-4 are inconsistent with the TCA were implicitly repealed by that statute. Accordingly, the State is not obligated to indemnify Chasin pursuant to *N.J.S.A.* 18A:60-4.

## VI.

The Legislature intended the TCA to protect state employees from claims for damages resulting from negligent acts performed during the course of their employment. Thus, the State's duty to defend and indemnify an employee is limited to civil actions seeking compensatory damages for tortious conduct. The decision to represent an employee in any other action is within the discretion of the Attorney General. An employee's disregard for the Attorney General's legal position obviates any duty to indemnify the employee. Because Chasin's underlying suit was not a civil claim for damages, she was not entitled to a defense under *N.J.S.A.* 59:10A-3. There was no obligation on the part of the Attorney General to provide a defense. Once a defense is denied in an action that does not arise in tort, there is no right to indemnification. *N.J.S.A.* 59:10-2; *see also Helduser, supra,* 191 *N.J.Super.* at 506-07, 467 *A.*2d 1094.

We conclude that Professor Chasin is not entitled to indemnification under either the TCA or *N.J.S.A.* 18A:60-4. The judgment of the Appellate Division is affirmed and modified in accordance with this opinion.

O'HERN, J., dissenting.

I find it unusual that the Court should strain so hard to deny legal representation to a professor at one of our State universities in connection with a student's claim against her. I have a sense that there is implicit in the Court's decision a determination that it was an unpatriotic act not to award the requested grade to a veteran of the 1991 Persian Gulf War. At first glance, the teacher's position does appear to conflict with the 1991 Desert Storm Law, *L.* 1991, *c.* 167. On closer analysis, as the Appellate Division found, she should be given a hearing to explain her position. The record, fairly read, strongly suggests that Professor Chasin acted in good faith. If she did, then for the Court to sustain the Attorney General's denial of indemnification for her counsel fees undermines the protection that the Legislature intended to be provided to State employees sued because of the faithful discharge of their public duties.

We often say that government must "turn square corners." *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 426, 495 *A.*2d 1313 (1985) (citation omitted). If a mixed metaphor may be forgiven, the State did more here than cut corners; rather it kept moving the goalposts in order to prevent this teacher from obtaining reimbursement for the legal fees that she incurred in vindicating her proper performance of her public duties. First the State represented to Professor Chasin that she would be able to recover her legal expenses under *N.J.S.A.* 59:10-2 of the Tort Claims Act (TCA), *N.J.S.A.* 59:1-1 to 12-3, so long as she was not guilty of willful misconduct. Then after she had incurred the legal expenses, the State told her that she had *no* rights under the TCA, but that it was entirely discretionary whether the Attorney General should provide her a legal defense. Finally, when *N.J.S.A.* 18A:60-4 of the Higher Education Act, *N.J.S.A.* 18A:60-1 to -15, appeared to provide a parallel form of indemnity to that under the TCA, the State argued that 18A:60-4 had been impliedly repealed. Except to require a hearing on the issue of willful

misconduct, the Appellate Division did not accept the State's arguments. I would affirm its judgment.

I

Professor Chasin is entitled to indemnification under *N.J.S.A.* 59:10–2 because that is what the Attorney General's office represented to her before she incurred the expenses.

A fair regard for the rights of public employees suggests that public employers should not renege on promises of such consequence. The Attorney General's August 25, 1992 letter denying representation stated: "This decision is based on the actions of Professor Chasin. . . ." In addition, the letter recited that there would be a serious question of a conflict of interest if the Attorney General were to represent both Chasin and the State. The letter concluded: "In light of this determination, whether Professor Chasin will be entitled to indemnification by the State will be governed by the provisions of *N.J.S.A.* 59:10–2."

*N.J.S.A.* 59:10–2 provides indemnification for tortious conduct if the employee establishes that the act or omission complained of occurred within the scope of the employment and the State fails to establish that the employee "acted or failed to act because of actual fraud, actual malice or willful misconduct."

It is certain that the record in this case does not establish that the teacher's actions were the result of fraud, actual malice or willful misconduct. Of course, I agree that a public employee has a duty to cooperate with the Attorney General and, indeed, that once the Attorney General agrees to defend a public employee, the Attorney General has exclusive control over the employee's representation. *N.J.S.A.* 59:10A–4. I therefore agree that an employee may not willfully or wrongfully disregard the advice of the Attorney General. This does not, however, mean that the employee must follow the incorrect advice of an Attorney General at the expense of forfeiture of her right to indemnification.

In its opposition to Professor Chasin's motion to be indemnified for the legal fees that she had incurred, the Attorney General furnished an affidavit by a Deputy Attorney General stating:

I indicated that Professor Chasin was obliged by that law to award Lloyd a grade on the basis of the work he completed in the course to the date he was called to active duty in the Persian Gulf Conflict [presumably his mid-term exam grade]. It was my opinion that Professor Chasin could not require that Lloyd do additional work for a grade in the course.... Professor Chasin refused to conform to the law as interpreted by the Attorney General's Office.

The Attorney General's office appears to have misunderstood Professor Chasin's position. What she sought was not additional work, but as she stated,

some form of demonstration from [the student] that he has learned the material [from the date of his mid-term exam on November 1 until the date that he left for military service on December 4]. I have offered him the choice of a take-home final or a paper discussing the material covered between the midterm and Dec[ember] 4[ ].

The professor may appear to be a stickler to have insisted on grading the student based on this work but apparently she and he had agreeably discussed this before he left for active duty. In fact, both professor and student had signed an "Incomplete Contract" in December 1990, agreeing that the student would complete either a make-up final examination or a paper covering the material taught from the date of the mid-term examination through the student's last day of class. The professor's position does not appear to be totally unreasonable or arbitrary, especially considering that the Desert Storm Law was not approved until June 19, 1991.

Pursuant to a stipulation of settlement, the grade approved by the Chancellor of Higher Education to be awarded to the veteran for the course, Sociology of Rich and Poor Nations, Fall 1990, under the Desert Storm Law, was based upon his attendance for the first thirteen weeks of the course until December 4, 1990, and his completion of the examinations administered during the first eight weeks of the course. However, it was the University, not the teacher, that was to issue an "administrative grade" with that notation on his transcript. At the very least, there should be, as required by the Appellate Division, a hearing to determine wheth-

er or not Professor Chasin's understanding of the law was correct or whether she should be penalized for having pursued her understanding to a legal determination different from that of the Attorney General.

For four and one-half years, plaintiff incurred attorneys' fees in reliance on the Attorney General's position that plaintiff's entitlement to reimbursement by the State would be governed by *N.J.S.A.* 59:10-2. It would be a gross breach of trust to permit the State now to renege on its position. *See W.V. Pangborne & Co. Inc. v. New Jersey Dep't of Transp.,* 116 *N.J.* 543, 561-62, 562 *A.*2d 222 (1989) (holding that department's failure to deal clearly with statute of limitations issue constituted breach of implied duty of good faith and fair dealing); *Vogt v. Borough of Belmar,* 14 *N.J.* 195, 205-07, 101 *A.*2d 849 (1954) (holding estoppel may be invoked against municipality that promised workers' compensation benefits to volunteer firemen to prevent manifest wrong and injustice).

## II

Even if the Attorney General is permitted to repudiate the offer of reimbursement under the TCA, the claim against Professor Chasin was akin to a civil rights claim entitling her to a defense under the TCA as a matter of right.

In its Civil Case Information Statement for its appeal to the Appellate Division, the Attorney General's office listed only one basis for challenging the trial court judgment that awarded plaintiff indemnification and reimbursement of attorneys' fees: "A State employee is not entitled to reimbursement of attorneys' fees pursuant to *N.J.S.A.* 59:10-2 or *N.J.S.A.* 18A:60-4 when the employee is sued because she did not comply with the legal advice of the Attorney General." Midway through the appeal, four and one-half years after Chasin requested indemnification for the legal costs incurred as a result of the lawsuit, the State asserted that when a State employee is sued in a civil action arising out of her employment, it is entirely within the Attorney General's discretion to determine whether the employee shall be indemnified if the action seeks only exemplary damages and injunctive relief. This is true, the State contends, even if the employee acted in good

faith and is completely vindicated in her position. The Appellate Division correctly perceived the flaw in the State's argument:

[T]he Tort Claims Act was enacted in response to the selective abolition of the State's sovereign immunity in contract and tort. *Helduser v. Kimmelman,* 191 *N.J.Super.* 493, 508–09, 467 *A.*2d 1094 (App.Div.1983). Further, "[b]ecause state employees were subject to civil liability although the State was immune, protecting them against civil liability was considered an important goal...." *Id.* at 509, 467 *A.*2d 1094. There is no logical basis to distinguish claims where compensatory damages are sought and claims where exemplary damages are sought. Employees need the same security in both situations.

Thus, the Appellate Division read *N.J.S.A.* 59:10A–1 as it is plainly written, and held that unless there is an exception under *N.J.S.A.* 59:10A–2, the Attorney General must provide for the defense of *any* action brought against a State employee on account of an act or omission in the scope of employment.

New Jersey construes its obligation to indemnify employees under the TCA as extending to the defense of civil rights actions brought pursuant to 42 *U.S.C.A.* § 1983. *In re Petition for Review of Opinion 552 of Advisory Comm. on Prof'l Ethics,* 102 *N.J.* 194, 197, 507 *A.*2d 233 (1986). In addition, New Jersey is one of the few jurisdictions that will indemnify its employees for punitive damages. *N.J.S.A.* 59:10–1. This was an action seeking damages for rights guaranteed under State law. Numerous State employees in high-profile cases of civil rights violations have been defended by the Attorney General. Professor Chasin was entitled to a defense under *N.J.S.A.* 59:10A–1. If the Attorney General refused to defend her, Professor Chasin was entitled to indemnification under *N.J.S.A.* 59:10–2, which provides that "[i]f the State employee establishes that he [or she] was entitled to a defense under the provisions of this chapter, the State shall pay or reimburse" the employee for "all costs of defending the action, including reasonable counsel fees and expenses, together with costs of appeal, if any."

### III

*N.J.S.A.* 18A:60–4 was not impliedly repealed by the TCA.

In the State's final goalpost move, it asserts that the passage of the TCA in 1972 impliedly repealed *N.J.S.A.* 18A:60–4's grant of indemnity for a State college professor. The statute, since repealed, provided:

> Whenever any civil action has been or shall be brought against any professor, associate professor, [or] assistant professor ... for any act or omission arising out of and in the course of the performance of the duties of such ... position or employment, the state shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom; and the state may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.

At the time of the suit against Chasin in 1992, *N.J.S.A.* 18A:60–4 was in effect. Plaintiff's complaint for reimbursement of her legal fees made specific reference to the statute. In the answer to the complaint, the Attorney General never asserted that the statute had been impliedly repealed. Quite aside from the fact that the repealer argument was never raised in the State's trial papers or in defendant's Appellate Division Case Information Statement, this Court finds that the issue is before us. It is disheartening to me that the Court would so abandon its precedent as to find an implied repeal in the face of our precedent. I would rather that the Court simply deny counsel fees to Professor Chasin on the basis of her conduct than to suggest that *N.J.S.A.* 18A:60–4 had been impliedly repealed. This Court has held in a long series of cases that

> there is a "strong presumption" against such an implied repeal, *City of Camden v. Byrne*, 82 *N.J.* 133, 154, 411 *A.*2d 462 (1980), and that presumption will be overcome only *by proof beyond a reasonable doubt that the [L]egislature intended a negation of the prior law. Swede v. City of Clifton*, 22 *N.J.* 303, 317, 125 *A.*2d 865 (1956).... [T]he intent of the [L]egislature to effect an implied repealer of a prior statute "will not arise by implication unless the subsequent statute is plainly repugnant to the former and is designed to be a complete substitute for the former." *State v. Drake*, 79 *N.J.Super.* 458, 461–62, 191 *A.*2d 802 (App.Div.1963). Two statutes are said to be "repugnant" only if it is "impossible to give the two concurrent operative effect." *State v. Gledhill*, [ ] 67 *N.J.* [565,] 580[, 342 *A.*2d 161] [ (1975) ].
>
> [*State v. Milligan*, 104 *N.J.* 67, 70–71, 514 *A.*2d 1316 (1986) (emphasis added).]

In *Kemp by Wright v. State, County of Burlington,* Justice Coleman summarized the test for determining whether an implied repeal has occurred:

> When a subsequent enactment covering a field of operation coexistent with a prior statute cannot by any reasonable construction be given effect while the prior law remains in existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict.
>
> Conversely, if the inconsistency between a later act and an earlier one is not fatal to the operation of either, the two may stand together and no repeal will be effected.
>
> [147 *N.J.* 294, 307, 687 *A.2d* 715 (1997) (quoting 1A Norman J. Singer, *Sutherland Statutory Construction* § 23.09 at 338–39 (footnotes omitted)).]

In *Kemp,* the Court found that the two laws were fatally inconsistent because it was impossible to give them concurrent effect. If there were immunity under the earlier law, there could not be liability under the later law. Not so here. The greater rights, if they are deemed so, afforded to teachers at State colleges under the Higher Education Restructuring Act, *L.* 1994, *c.* 48, § 307, may co-exist with the lesser rights afforded to all public employees under the TCA. There is thus no irreconcilable conflict or fatal inconsistency between *N.J.S.A.* 18A:60–4 and the TCA.

Indeed, there is no apparent conflict at all. Both statutes provide for the indemnification of State employees, including reimbursement of the costs of defending actions and reasonable attorneys' fees. Both statutes require that in order to be indemnified, the employee's conduct must have occurred within the scope of employment. The TCA also provides that the employee will not be entitled to indemnification if the State establishes that the employee engaged in "actual fraud, actual malice or willful misconduct." *N.J.S.A.* 59:10–2. Although this requirement is not explicitly included in *N.J.S.A.* 18A:60–4, our courts have held that an employee cannot claim to have acted within the scope of employment unless the employee acted "in the discharge of a duty imposed or authorized by law and ... in good faith." *Scirrotto v. Warren Hills Bd. of Educ.,* 272 *N.J.Super.* 391, 397, 640 *A.2d* 302 (App.Div.1994) (quoting *Errington v. Mansfield Tp. Bd. of Educ.,*

81 *N.J.Super.* 414, 420, 195 *A.*2d 670 (App.Div.1963), *rev'd and remanded on other grounds,* 42 *N.J.* 320, 200 *A.*2d 492 (1964).)

As noted, the State now argues that the TCA gives the Attorney General absolute discretion to decide whether to indemnify a State employee such as plaintiff. Even if this argument had any merit, it would not create an "irreconcilable conflict" between *N.J.S.A.* 18A:60–4 and the TCA.

For example, as plaintiff explains, the TCA provides that a local public authority has the discretion whether to indemnify local public employees. *N.J.S.A.* 59:10–4. Nonetheless, several other statutes pre-dating the TCA provide that in certain cases, indemnification of local employees is mandatory. *See, e.g., N.J.S.A.* 18A:12–20 (indemnity in civil actions for members of boards of education); *N.J.S.A.* 18A:16–6.1 (indemnity for local school officials and employees in criminal actions); *N.J.S.A.* 40A:14–28 (indemnity for employees of municipal fire departments); *N.J.S.A.* 40A:14–155 (indemnity for employees of municipal police departments).

Courts have consistently disapproved of the notion that related indemnification laws were implicitly repealed by the TCA. In *Lameiro v. West New York Board of Education,* 136 *N.J.Super.* 585, 589–91, 347 *A.*2d 377 (Law Div.1975), the court rejected the argument that the TCA impliedly repealed the indemnity provision of *N.J.S.A.* 18A:16–6. Observing that "[i]ndemnity ... is not alien to the [A]ct," the court found no inconsistency between the permissive indemnity of the TCA and the mandatory indemnity of *N.J.S.A.* 18A:16–6. *Id.* at 590, 347 *A.*2d 377.

The legislative history also supports the conclusion that *N.J.S.A.* 18A:60–4 was not impliedly repealed by passage of the TCA. The Legislature was plainly aware of *N.J.S.A.* 18A:60–4 when it passed the TCA. Plaintiff notes that the Attorney General's Task Force Report twice discussed *N.J.S.A.* 18A:60–4, along with several other related provisions. *See Report of the Attorney General's Task Force on Sovereign Immunity* 37–38, 47–48 (1972), *reprinted in* Harry A. Margolis and Robert Novack, *Claims*

*Against Public Entities* (1998). Several of the other provisions discussed were included for explicit repeal, but *N.J.S.A.* 18A:60–4 was not. *Compare id.* at 37 (discussing *N.J.S.A.* 18A:60–4 and *N.J.S.A.* 38A:4–9, which provided tort immunity to members of organized militia) and *id.* at 46–49 (discussing *N.J.S.A.* 18A:20–35, which granted tort immunity to school districts, *N.J.S.A.* 38A:4–10, which required the Attorney General to represent and defend militia members against tort suits, and *N.J.S.A.* 18A:60–4), *with N.J.S.A.* 59:12–2 (explicitly repealing *N.J.S.A.* 18A:20–35, *N.J.S.A.* 38A:4–9, and *N.J.S.A.* 38A:4–10). Given the Legislature's obvious awareness of *N.J.S.A.* 18A:60–4, the failure to include it for explicit repeal negates an intent of implied repeal. *Cf. Bower v. Board of Educ.*, 287 *N.J.Super.* 15, 29–30, 670 *A.*2d 106 (App.Div. 1996), *aff'd* 149 *N.J.* 416, 694 *A.*2d 543 (1997) (observing that "Basic tenets of statutory construction counsel that when one of two similar or related statutes is amended, the fact that the Legislature retains the second statute as originally written operates as an implicit approval of the second statute.").

The argument that the TCA implicitly repealed *N.J.S.A.* 18A:60–4 in 1972 is belied by the fact that the Legislature explicitly repealed *N.J.S.A.* 18A:60–4 twelve years later, with the Higher Education Restructuring Act of 1994, *L.* 1994, *c.* 48, § 307. This act, we will recall, abolished the Department of Higher Education and made the State colleges and universities independent institutions. Concomitant with that independence was the right to provide indemnification for their officers and employees independent of that provided by the Attorney General.

Finally, the "later express repeal of a particular statute may be construed as some indication that the legislature did not previously intend to repeal the statute by implication." 1A Norman J. Singer, *Sutherland Statutory Construction* § 23.11, at 362 (5th ed.1993). There is nothing in the Higher Education Restructuring Act of 1994 that states or suggests that *N.J.S.A.* 18A:60–4 was merely an obsolete or superseded statute that was being removed from the books. *Cf. Central Constr. Co. v. Horn*, 179 *N.J.Super.*

95, 102, 430 A.2d 939 (App.Div.1981) (noting that introductory statement to bill said purpose was "to remove obsolete laws from the books" that had been *previously* superseded). Nor was *N.J.S.A.* 18A:60-4 repealed as part of a larger repeal of the entire chapter of which it is a part. Indeed, *N.J.S.A.* 18A:60-5, a companion provision for indemnification in criminal actions, remains unaffected. *Cf. Kemp, supra,* 147 *N.J.* at 310-11, 687 A.2d 715 (stating that express repeal was part of larger repeal of entire chapter, "in anticipation of the enactment of a new chapter").

The plain reason for the repeal in 1994 of *N.J.S.A.* 18A:60-4 is that its plan of indemnification was being replaced by a wholly new system. Under the Higher Education Restructuring Act of 1994, each State college

> shall elect within 75 days of the effective date of this act whether it, and its employees, shall be represented in all such matters by the Attorney General. If the institution elects not to be represented by the Attorney General, it shall be considered and its employees considered employees of a sue and be sued entity for the purposes of the "New Jersey Tort Claims Act" only. The institution shall be required in that circumstance to provide its employees with defense and indemnification consistent with the terms and conditions of the Tort Claims Act in lieu of the defense and indemnification that such employees would otherwise seek and be entitled to from the Attorney General....
>
> [*N.J.S.A.* 18A:3B–6(h).]

In replacing *N.J.S.A.* 18A:60-4, the Legislature did not intend that the repealed law would have no effect on prior proceedings. On the contrary, the 1994 Act provides that "[a]ll petitions, controversies and disputes pending before ... the Chancellor of Higher Education and not disposed of as of the effective date of this act shall be decided by the commission under the law under which the action arose as though this act had not been enacted." *N.J.S.A.* 18A:3B–29. *Cf. Kemp, supra,* 147 *N.J.* at 311, 687 A.2d 715 (stating that where express repeal is *not* accompanied by "savings clause or other language limiting the effect of its repeal ... it is most likely that the Legislature intended that [the repealed law] should be considered 'as though it had never existed.'") (citation omitted).

Because the Attorney General told Professor Chasin that *N.J.S.A.* 59:10–2 would apply to her claim, the Attorney General was, subject to a hearing on the issue of willful misconduct, required to indemnify Professor Chasin under that provision once the matter was resolved. Similarly, because the claim against Professor Chasin was a civil rights claim for damages, she was entitled to a defense under the TCA as a matter of right, not as a matter of discretion. Finally, because there is no basis to conclude that the TCA implicitly repealed *N.J.S.A.* 18A:60–4, Professor Chasin's legal costs are reimbursable under that Act. For these reasons, I would affirm the judgment of the Appellate Division and allow the remand on the question of Professor Chasin's conduct.

STEIN, J., joins in this opinion.

STEIN, J., dissenting.

This appeal concerns a Montclair State University professor's commitment to academic freedom, and her good faith belief that a statute enacted by the Legislature did not compel her to issue a grade to a student called to serve in the Gulf War who, on his return, declined to be tested or to write a report covering approximately one month's ungraded work. Her position was sustained by the University's Grade Grievance Committee and the Provost. When the student sued seeking injunctive relief and punitive damages, the Attorney General refused to defend the professor. After the suit was settled without any determination adverse to the professor, the Attorney General refused to reimburse her for counsel fees. Although the State's legal position reflected its belief that the professor defied the Attorney General's legal advice, the record to the contrary is crystal clear: there never was any direct communication from the Attorney General to the professor, oral or written, informing the professor that she was violating the law. A conversation to that effect between a Deputy Attorney General and the professor's lawyer took place, but only *after* the student filed suit. Although the Court's opinion persis-

tently attempts to mischaracterize the professor as defying the Attorney General's legal advice, the record to the contrary is uncontested.

I join Justice O'Hern's cogent, persuasive and, in my view, unanswerable dissenting opinion. I write separately because of my conclusion that the Attorney General's office disregarded the applicable statutes and abused its discretion when it declined to represent or indemnify the professor who was sued by a student to compel her to issue him a grade and to recover punitive damages for her failure to do so. That the Attorney General's office would adopt so petty and crabbed an approach to the question of defense or reimbursement of a University professor asserting so defensible a position and motivated by a respect for academic freedom is disappointing indeed. Accordingly, I find it especially troublesome that the Court has obscured the facts and misapplied the law in its efforts to sustain the unsustainable action of the Attorney General. I believe that the Court's obligation to preserve the judiciary's independence from the coordinate branches of government is compromised by its disposition of this appeal.

I

A precise understanding of the facts is critical to an appreciation of the issues posed by this appeal. John Lloyd, a student in Professor Barbara Chasin's course entitled "Sociology of Rich and Poor Nations" in the fall semester of 1990, received notice during the semester to report to duty to serve in the United States forces in the Gulf War. On October 1, 1990, Lloyd took a quiz and received an A; on November 1, 1990, Lloyd took the midterm exam and also received a grade of A. He continued to attend class for approximately five weeks before departing for duty on December 4, 1990. Before leaving for the Gulf War he signed an "Incomplete Contract" with Professor Chasin in which he agreed, on his return, to take a test or submit a paper to cover the weeks of class attendance on which he had not yet been tested.

While Lloyd was in the service, the Legislature passed *L.* 1991, *c.* 167, which in pertinent part provided as follows:

> A student who is a member of the New Jersey National Guard or of the Reserve component of the Armed Forces of the United States, and who is unable to complete a course or courses at a New Jersey institution of higher education because the student is called to active duty in consequence of the current United Nations action in the Persian Gulf known as operation "Desert Shield" or "Desert Storm," shall be entitled to receive a grade in each course for which the student has completed a minimum of 8 weeks' attendance and all other academic requirements during that period. *The grade shall be based on the work completed up to the time when the student was called to active service.*

[Emphasis added.]

On his return from the Gulf War, Lloyd requested that Professor Chasin issue him a grade of A because he believed that he was entitled to receive that grade in accordance with the terms of the foregoing legislation. Professor Chasin disagreed, reading the statute's requirement that a student's grade be based on all of "the work completed" prior to departing for military service to mean that a student called to military service would receive a grade based on all material covered until the date of the student's departure. She suggested that Lloyd take a test or write a paper covering his experiences in the Gulf War in satisfaction of the requirement that he provide additional evidence of his entitlement to a grade. Lloyd refused and when Professor Chasin would not yield, Lloyd filed a grievance with the Grade Grievance Committee of the University faculty.

Before the grievance was heard by the Committee, the University Provost wrote to Professor Chasin, enclosing a copy of the pertinent legislation, and stating:

> I believe that you have asked that Mr. Lloyd fulfill the terms of the incomplete contract entered into in December 1990 or, alternatively, you will give him an F. I urge you to read carefully the attached copy of the law.... I appreciate your concerns and understand the position you have taken. But, as employees of the State of New Jersey we have an obligation to obey the laws enacted by the legislature. I hope that you will agree.

Significantly, prior to Lloyd's appeal to the Grade Grievance Committee, *no one from the Attorney General's office ever communicated with Professor Chasin concerning whether her inter-*

*pretation of the statute was consistent with the Attorney General's interpretation.*

While the Grade Grievance Committee hearing was pending, a representative of the Attorney General's office apparently appeared at an organizational meeting of the Committee and orally communicated the view that Professor Chasin was obligated to issue an A grade to Lloyd. Counsel to the University faculty objected to the Attorney General's interference with the Committee's deliberations and advised the Committee that it should reconstitute itself with members who had not been influenced by the Deputy Attorney General's appearance. Whether the Committee was reconstituted is not revealed by the record, but it is a reasonable assumption that the Committee, in deciding Lloyd's appeal, did not consider itself bound by the Attorney General's informally expressed views concerning the statute.

On May 7, 1992, the Grade Grievance Committee sustained Professor Chasin's refusal to issue Lloyd a grade, based on its "belief that the law is ambiguous and open to several interpretations." The University Provost sustained the Grade Grievance Committee's decision and informed Lloyd that his grade in the course would be "incomplete." After her action was upheld by the Grade Grievance Committee and by the University Provost, Professor Chasin did not issue Lloyd a grade.

Lloyd then filed suit in the Superior Court, Chancery Division, Essex County, seeking both injunctive relief and damages against Professor Chasin and the Provost. The injunctive relief requested was that the court compel Professor Chasin and the University to issue Lloyd a grade of A in the course. With respect to the damages claim, the complaint alleged that Professor Chasin and the Provost had "intentionally and maliciously refused to provide the plaintiff with the grade to which the New Jersey Legislature has entitled him," and that because of their "intentional, wanton and malicious" refusal Lloyd had been harmed and was entitled to punitive damages.

Chasin then requested representation from the Attorney General's office who, according to the record, *had never directly communicated with Professor Chasin, either orally or in writing, prior to Lloyd's institution of suit.* The Attorney General's office agreed to represent the University and the Provost but declined to represent Professor Chasin. The letter refusing her representation stated as follows:

> After review of the factual and legal background from which the above litigation arises, this office has determined that it will not provide legal representation for Professor Chasin pursuant to the New Jersey Tort Claims Act in connection with this matter. This decision is based upon the actions of Professor Chasin with regard to this matter and the Attorney General's discretion pursuant to *N.J.S.A.* 59:10A-2 to refuse such representation. There is also a serious question as to whether the Attorney General's representation of Professor Chasin in this matter would constitute a conflict of interest between the State and Professor Chasin. *N.J.S.A.* 59:10A-2(c). *In light of this determination, whether Professor Chasin will be entitled to indemnification by the State will be governed by the provisions of N.J.S.A. 59:10-2.*

> [Emphasis added.]

Significantly, the section of the Tort Claims Act referred to by the Attorney General's letter requires indemnification in claims sounding in tort unless the employee was acting outside of the course of employment or had acted because of fraud, malice or wilful misconduct. Accordingly, at the outset of the litigation Chasin rightfully would have assumed that her eventual claim for indemnification for legal expenses would be based on whether she had been found to have committed wilful misconduct, there being no suggestion of fraud or malice in the record.

The lawsuit progressed for approximately two years and eventually was settled in 1994 by a stipulation of dismissal. The tort claims for punitive damages were dismissed and the University agreed to issue Lloyd an administrative grade of A. No admission that Chasin had acted wrongfully was included in the stipulation nor was she required to acquiesce in the issuance of the grade.

Chasin then requested indemnification for her counsel fees of approximately $12,000 and the Attorney General's office denied her request. She instituted this action. In an affidavit filed in support of the Attorney General's motion for summary judgment,

*and dated approximately two years after Lloyd's underlying suit was settled,* Deputy Attorney General Grey J. Dimenna certified that *after Lloyd had filed suit* against Professor Chasin *he had informed her counsel* that her interpretation of the law was incorrect and that she was required to issue Lloyd a grade. The Court's reference to Deputy Attorney General Dimenna's certification is misleading. ("Dimenna alleges that he had several conversations with Chasin's counsel informing him of her duties under the statute.") *Ante* at 435, 732 *A.*2d at 466. The Court fails to acknowledge that any such conversation occurred *after* Lloyd had filed suit.

In the Law Division Judge Kirsten granted Chasin's summary judgment motion, concluding as a matter of law that Professor Chasin had acted in good faith and thereby rejecting any suggestion that her actions constituted wilful misconduct. He also observed that a university professor was not bound by the Attorney General's interpretation of the law and was free to take action that was inconsistent with the Attorney General's legal opinion.

The Attorney General's office appealed to the Appellate Division, setting forth in its Case Information Statement the following basis for reversing the Law Division's judgment: *"A state employee is not entitled to reimbursement of attorneys fees pursuant to N.J.S.A. 59:10-2 or N.J.S.A. 18A:60-4 when the employee is sued because she did not comply with the legal advice of the Attorney General."* (Civil Case Information Statement, at 1—June 21, 1996)(emphasis added). Not until the filing of briefs in the Appellate Division did the Attorney General's office assert the legal position adopted by the majority in this appeal, that pursuant to *N.J.S.A.* 59:10A–1, the Attorney General was not obligated to represent or indemnify a state employee in respect of claims not sounding in tort. Moreover, not until the filing of post-argument briefs with this Court did the Attorney General assert that *N.J.S.A.* 18A:60–4 had been impliedly repealed by the Tort Claims Act.

## II

## A

*Lloyd's Suit Against Professor Chasin Was A Tort Action For Which Representation And Indemnification Were Mandatory In The Absence Of Wilful Misconduct*

The Court's opinion ignores this issue and treats Lloyd's claim against Chasin as if it were a claim solely for equitable relief. The majority apparently has elected to read only allegations one through fifteen of Lloyd's complaint. An examination of allegations sixteen through eighteen would cause the Court to recognize that Lloyd had alleged tortious, and in fact, intentional wrongdoing on the part of Professor Chasin and the Provost, and sought punitive damages as redress for that wrongdoing. That claim is not equitable. Its essence is tort, and as the Attorney General successfully argued to this Court, *N.J.S.A.* 59:10A–1 mandates that the Attorney General provide a defense concerning that claim.

The majority counters with the observation that Lloyd's "ancillary request for exemplary damages" does not alter the fundamental nature of his claim. *Ante* at 431, 732 *A.2d* at 464. In the context of a claim for representation under *N.J.S.A.* 59:10A–1, that assertion is groundless.

The Court expressly holds in its opinion that the Attorney General's obligation to defend and indemnify under *N.J.S.A.* 59:10A–1 "arises only in the context of civil actions seeking damages for tortious conduct." *Ante* at 431, 732 *A.2d* at 464. Lloyd's suit was such a civil action. To the extent we are informed about the conduct of that litigation, all we know is that the suit was settled and no damages were paid. That result hardly negates the incontrovertible fact that among the claims asserted against Professor Chasin was a claim sounding in tort and seeking punitive damages.

Because Lloyd sued Professor Chasin and the Provost in tort, then only by contending that Professor Chasin's actions constituted "wilful misconduct" could the Attorney General successfully

argue that it had no obligation to defend Lloyd's suit and to indemnify Professor Chasin for her legal expenses. Surely, no proof of wilful misconduct exists on this record. The record informs us that at no time prior to the organizational meeting of the Grade Grievance Committee did the Attorney General's office communicate to anyone its interpretation of the statute. At that meeting Deputy Attorney General Dimenna appeared and apparently informed the Committee that in his view Professor Chasin was obligated to give Lloyd a grade. Deputy Attorney General Dimenna's certification indicates that the first time he informed Professor Chasin's counsel of his interpretation of the statute was after Lloyd had filed suit. Because Professor Chasin's interpretation of the statute was sustained by both the Grade Grievance Committee and the Provost, no one seriously could contend that her actions constituted wilful misconduct.

Moreover, the meaning of the statute was sufficiently debatable to justify a professor's conclusion that a student's entitlement to a grade, even under the statute, mandated a demonstration of proficiency concerning the work covered in class prior to the student's departure for the Gulf War. The statutory language indicating that the grade should be based on "the work completed up to the time when the student was called to active service" is imprecise, and does not clearly resolve the dispute between Lloyd and Professor Chasin.

## B

*The Attorney General's Office Should Be Estopped From Asserting That N.J.S.A: 59:10A-2 Does Not Control Professor Chasin's Right To Reimbursement*

In *W.V. Pangborne & Co. v. New Jersey Department of Transportation,* 116 *N.J.* 543, 562 *A.*2d 222 (1989), Justice Handler, writing for the Court, emphasized the principle that government has a special obligation to "turn square corners" and to deal fairly with the public. *Id.* at 561, 562 *A.*2d 222. That obligation surely extends to public employees. In *Pangborne,* we held that the Department of Transportation was estopped from asserting a

statute of limitations defense that was inconsistent with the actions it took with respect to its review of a contractor's claim for additional compensation.

That same principle should apply here. The Attorney General's office, in declining to represent Professor Chasin in 1992, informed her that her right to indemnification would be governed by the statutes that afford representation and indemnification to public employees sued in tort, and the clear implication of the Attorney General's communication was that the determination of her entitlement to reimbursement would be based on whether her actions constituted wilful misconduct. As noted, there simply is no basis in the record on which to conclude that Professor Chasin's actions remotely resembled wilful misconduct. Accordingly, the Attorney General's office should have honored its commitment and reimbursed Professor Chasin for her fees.

## C

*If The Court Concludes That The Suit Against Professor Chasin Did Not Sound In Tort, And Ignores The Attorney General's Commitment To Determine Her Right To Reimbursement On The Basis Of N.J.S.A. 59:10–2, There Is No Basis In This Record To Justify The Attorney General's Discretionary Determination To Deny Professor Chasin Representation Or Reimbursement Pursuant To N.J.S.A. 59:10A–3*

The extent of the discretion reposed in the Attorney General to deny representation or reimbursement of public employees sued on the basis of actions taken in the course of their employment must be informed by the Legislature's assumption that under ordinary circumstances state employees should not be expected to bear their own legal fees when actions taken in the course of their employment are lawful and proper. In other contexts, the Attorney General's office has generously accorded state employees the benefit of the doubt in deciding whether allegations of misconduct or other disqualifying activity are sufficient to justify denial of representation. In comparison, to whatever extent Professor Chasin's conduct may possibly be criticized, her motivation—the preservation of academic freedom—clearly was admirable and

unselfish.  Because Professor Chasin acted in good faith and with a laudable motive, and was *never* informed that her refusal to issue Lloyd a grade was unlawful, the discretionary decision to deny her indemnification is impossible to justify.

The question whether a discretionary refusal to represent or indemnify Professor Chasin is sustainable might be closer if the Attorney General's office had informed her of its legal opinion concerning the proper interpretation of the statute prior to Lloyd's appeal to the Grade Grievance Committee.  Indisputably, that was not done.  According to the record before us, *no written legal opinion concerning this matter was ever rendered by the Attorney General's office to anyone,* and the only indication in the record of the Attorney General's views concerning the statute is Deputy Attorney General Dimenna's appearance at the organizational meeting of the Grade Grievance Committee at which he orally conveyed the view that Professor Chasin was required to give Lloyd a grade.  As the Appellate Division observed, that communication is a "thin reed" on which to base a conclusion that Professor Chasin acted in bad faith or committed wilful misconduct.  The only person that purported to give her legal advice was the Provost, who sent her a copy of the state statute.  Subsequently, that same Provost sustained the action of the Grade Grievance Committee that supported Professor Chasin's position.  Professor Chasin scrupulously followed the rules and procedures set down by her university and cannot by any standard be considered to have engaged in wilful misconduct.

D

*Professor Chasin Has An Undeniable Right To Indemnification Pursuant To N.J.S.A. 18A:60-4*

Justice O'Hern has dealt forcefully and persuasively with the majority's unsustainable conclusion that *N.J.S.A.* 18A:60-4 was impliedly repealed in 1972 by the Tort Claims Act. *Ante* at 447–52, 732 *A.*2d at 473–76.  As Justice O'Hern points out, the test for determining whether a statute has been impliedly repealed is

whether the repealing statute and the allegedly repealed statute are fatally inconsistent. There is not the remotest suggestion of a fatal inconsistency between these two statutes. The provision in the education law mandating reimbursement of counsel fees incurred by employees of state universities does not even involve the Attorney General's office. Instead, that statute simply requires reimbursement of legal fees in actions arising out of the employee's public employment. Under the Tort Claims Act, the burden of representation is borne by the Attorney General, but under the education law no such burden is imposed. Not only are the statutes not fatally inconsistent, they are totally harmonious and could coexist—as they did for approximately twenty-two years—until the education statute was repealed in 1994. That the Court would extend its jurisprudence to accommodate the specious arguments advanced by the Attorney General in support of the implied repeal of *N.J.S.A.* 18A:60-4 demonstrates that this case is being driven not by facts, not by law, but by a result.

## III

The simple truth about this case is that someone in the Attorney General's office exercised questionable judgment in denying representation and indemnification to Professor Chasin. Assuming incorrectly that Professor Chasin "did not comply with the legal advice of the Attorney General," a decision apparently was made to test the principle that public employees who *defy* the Attorney General's legal advice forfeit their right to representation or indemnification. Neither Justice O'Hern nor I quarrel with that principle, but it simply has no relevance to this appeal. Any advice by the Attorney General's office to Professor Chasin's counsel was delivered too late and too informally to constitute a justification for the decision to require her to bear the expense of Lloyd's suit.

I would hold that as a matter of law Professor Chasin is entitled to indemnification for her legal fees. Accordingly, I would affirm but modify the judgment of the Appellate Division.

O'HERN, J., joins in this dissent.

*For affirmance and modification*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, GARIBALDI and COLEMAN—5.

*For affirmance and remandment*—Justices O'HERN and STEIN—2.