The opinion of the court was delivered by ACCURSO, J.A.D.
*410 The question presented by this appeal is whether PERC, the Public Employment Relations Commission, is correct the contribution rates included in the Pension and Health Care Benefits Act (Chapter 78) L. 2011, c. 78, N.J.S.A. 52:14-17.28c, which top out at thirty-five percent, do not preempt the provision in the parties' contract requiring eligible retirees to contribute fifty percent of the costs of their health care coverage.
Article XXI of the 2011-2014 collective negotiations agreement (CNA) ending December 31, 2014 between the City of New Brunswick and the New Brunswick Municipal Employees Association, provided the City would assume fifty percent of the costs of health and welfare benefits for eligible retirees, that is, those employees with twenty-five years of service with the City or those who are sixty-two and have *396 either fifteen or twenty years of service with the City, depending on when they were hired.[1] See *411 N.J.S.A. 40A:10-23 (granting municipality discretion to assume all or part of the cost of health benefits to certain eligible retirees); Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 5, 935 A.2d 516 (2007) (discussing application of the statute).
During negotiations for the 2015-2018 contract to start January 1, 2015, the City proposed leaving Article XXI unchanged. The Association, however, took the position that contribution rates for retirees could not exceed those specified in Chapter 78. The City maintained Chapter 78 did not preclude the higher rate the parties had negotiated previously and refused to change the language. The parties eventually entered into a sidebar agreement, including Article XXI as previously negotiated in the 2015-2018 CNA subject to PERC's ruling on a scope-of-negotiations petition to be filed by the Association.
Before PERC, the Association argued N.J.S.A. 40A:10-21.1 established a ceiling for retiree contributions for health care coverage based on the sliding scale established in N.J.S.A. 52:14-17.28c. The City contended those statutes set a floor, not a ceiling, *412 on what local government employers could require retirees to contribute to their health care costs.
In a final decision on the scope petition issued October 20, 2016, PERC determined Chapter 78 does not preempt Article XXI. PERC began its analysis by acknowledging that although health benefits contributions are mandatorily negotiable, "an otherwise negotiable topic cannot be the subject of a negotiated agreement if it is preempted by legislation." Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J. 38, 44, 449 A.2d 1254 (1982). It found "negotiations over the level of health benefits contributions were first preempted by the enactment of P.L. 2010, c. 2 (Chapter 2)." Specifically, PERC found that
[n]otwithstanding any other amount that may be required additionally by the employer or through a collective negotiations agreement, Chapter 2 required all public employees to contribute 1.5% of base salary toward health benefits and those employees who became members of a public retirement system on or after Chapter 2's effective date to pay 1.5% of their monthly retirement allowance for health benefits in retirement. See N.J.S.A. 18A:16-17 ; N.J.S.A. 40A:10-21 ;
*397 N.J.S.A. 40A:10-23(b) ; N.J.S.A. 52:14-17.28b(c)(2).
In 2011, negotiations over the level of health benefits contributions were further preempted by the enactment of Chapter 78. Chapter 78 required all public employees to contribute a percentage of the cost of coverage for health benefits based upon employees' earning levels and specified the health benefits contribution required for public employees in retirement. See N.J.S.A. 18A:16-17.1 ; N.J.S.A. 40A:10-21.1 ; N.J.S.A. 52:14-17.28c ; N.J.S.A. 52:14-17.28d. However, negotiated health benefits contribution levels in excess of Chapter 78 levels remain in effect despite the enactment of Chapter 78[.]
Relying on N.J.S.A. 40A:10-21.1(d), which provides that "the authority to determine an amount of contribution ... by means of a binding collective negotiations agreement ... shall remain in effect with regard to contributions, whether as a share of the cost, or percentage of the premium or periodic charge, or otherwise, in addition to the contributions required" under subsections (a) and (b) of the statute, PERC concluded Article XXI was unaffected by Chapter 78 under the test for negotiability established by the Supreme Court in In re Local 195, IFPTE, 88 N.J. 393, 404-05, 443 A.2d 187 (1982).
*413 The Association appeals, contending Chapter 78 prohibits the City and the Association from negotiating "contribution rates above those expressed in N.J.S.A. 52:14-17.28c." The Association argues those rates, which establish what a retiree "shall pay," are "neither a floor nor a ceiling," but instead "limit[ ] any discretion" in setting contribution rates for eligible retirees.
The Association maintains that "[t]o the extent ... N.J.S.A. 40A:10-21.1(d) may allow an exception to the progressive payment plan under N.J.S.A. 52:14-17.28c, the exception is to apply only in very limited circumstances and only upon demonstration of compliance with N.J.S.A. 40A:10-21.1(c)," which did not occur here. The Association further contends that PERC's interpretation of Chapter 78 is at odds with the Legislature's goal of imposing "a progressive rate structure to ensure that lower income employees and eligible retirees [pay] a smaller percentage of their health care costs than higher income earners." We reject those arguments as without support in the statutory scheme and affirm PERC's ruling that Article XXI is not preempted by Chapter 78.
PERC has primary jurisdiction to determine in the first instance whether a matter in dispute is within the scope of collective negotiations. N.J.S.A. 34:13A-5.4(d) ; State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 83, 393 A.2d 233 (1978). Although a party dissatisfied with PERC's determination of course has recourse to this court, N.J.S.A. 34:13A-5.4(d), the scope of our review is narrow. State Supervisory, 78 N.J. at 83, 393 A.2d 233. "In the absence of constitutional concerns or countervailing expressions of legislative intent, [appellate courts] apply a deferential standard of review to determinations made by PERC." City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 567, 713 A.2d 472 (1998). We, however, owe no particular deference to PERC's interpretation of Chapters 2 and 78. Although both certainly affect employer/employee relations, PERC is not charged with administering either. See In re Camden Cty. Prosecutor, 394 N.J. Super. 15, 23, 925 A.2d 63 (App. Div. 2007).
*414 To determine whether the parties may continue to agree that retirees should contribute fifty percent of the costs of their health and welfare benefits after *398 Chapter 78, we look to the Legislature's intent in establishing the contribution schedule the Association maintains robbed the parties of their discretion in the matter. See DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). While the best indicator of that intent is the words of the statute, it is important to read those words "in context with related provisions so as to give sense to the legislation as a whole." Ibid. As the Supreme Court has cautioned:
a legislative provision should not be read in isolation or in a way which sacrifices what appears to be the scheme of the statute as a whole. Rather, a statute is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.
[ Chasin v. Montclair State Univ., 159 N.J. 418, 427, 732 A.2d 457 (1999) (quoting Zimmerman v. Mun. Clerk of Twp. of Berkeley, 201 N.J. Super. 363, 368, 493 A.2d 62 (App. Div. 1985) ).]
Here, we turn first to the statute that authorizes the City to assume the costs of health coverage for its retirees, N.J.S.A. 40A:10-23 (Section 23). Section 23, which applies principally to counties and municipalities, requires generally, with a caveat as to rates not implicated here, that "[r]etired employees shall be required to pay for the entire cost of [health insurance] coverage for themselves and their dependents." N.J.S.A. 40A:10-23(a). The statute, however, has also long permitted local governmental employers to assume the cost of that coverage for a limited class of retirees, those who have retired on a disability pension, or have twenty-five years of service, or are at least sixty-two years old, having at least fifteen years of service. Ibid.; see Fair Lawn Retired Policemen v. Borough of Fair Lawn, 299 N.J. Super. 600, 603, 606, 691 A.2d 859 (App. Div.) (interpreting N.J.S.A. 40A:10-23 to permit local governments to assume only part, as well as all, of the cost of such coverage), certif. denied, 151 N.J. 75, 697 A.2d 547 (1997).
In 2010, as part of the larger effort to address the health and sustainability of the State's pension and health care benefits *415 programs represented by Chapter 2, see Teamsters Local 97 v. State, 434 N.J. Super. 393, 404-09, 84 A.3d 989 (App. Div. 2014), the Legislature amended Section 23 to expressly permit local governments to assume only a portion of the health care costs of the class of retirees covered by the statute. L. 2010, c. 2, § 15; N.J.S.A. 40A:10-23(a). That change, which codified the holding in Fair Lawn, was necessitated by a new provision the law added to Section 23, requiring those employees becoming members of the retirement system on or after May 21, 2010, the statute's effective date, to pay 1.5 percent of their pension benefit toward the cost of their health coverage, "notwithstanding any other amount that may be required additionally ... through a collective negotiations agreement." L. 2010, c. 2, § 15; N.J.S.A. 40A:10-23(b).
Accordingly, in Chapter 2, the Legislature narrowed the discretionary health benefits local governments can elect to provide for retirees. Chapter 2 ended the ability of those governments to pay the entire cost of coverage for any retiree becoming a member of the retirement system after the statute's effective date, no matter how long the employee serves or at what age she retires. Local government employees becoming members of the retirement system after May 20, 2010 and retiring after twenty-five years of service, or after fifteen years of service for those sixty-two or older, will have to contribute at least 1.5 percent of their monthly retirement allowance for the costs of their *399 health benefits, should their employer agree pursuant to Section 23 to assume any portion of the cost of that coverage.
Consistent with the discretion afforded those local governments to choose or not to choose to assume any portion of the health benefits for eligible retirees, Chapter 2 makes clear the 1.5 percent contribution represents only a floor for the retiree's share. L. 2010, c. 2, § 15; N.J.S.A. 40A:10-23(b). The statute provides the retiree "shall pay in retirement 1.5 percent of the retiree's monthly retirement allowance, including any future cost-of-living adjustments, ... for health care benefits coverage provided under N.J.S.[A.] 40A:10-22, notwithstanding any other amount that may *416 be required additionally by the employer or through a collective negotiations agreement for such coverage." L. 2010, c. 2, § 15; N.J.S.A. 40A:10-23(b) (emphasis added). Accordingly, it is plain Chapter 2 does not preempt Article XXI's higher contribution amounts for eligible retirees, notwithstanding that the statute narrowed the negotiability of retiree health benefits under Section 23.
By the time the parties began negotiations over their 2015 contract, the State had already embarked on the sweeping pension and health benefit changes mandated by Chapter 78,[2] which, among other things, suspended collective negotiations over employee health benefits pending full implementation of the phased-in, progressive contribution schedule of N.J.S.A. 52:14-17.28c. Chapter 78 required all employees to contribute from three to thirty-five percent of their health care premium costs, rising with salary. See L. 2011, c. 78, §§ 39 ( N.J.S.A. 52:14-17.28c ), 40 ( N.J.S.A. 52:14-17.28d ), 41 ( N.J.S.A. 18A:16-17.1 ), 42 ( N.J.S.A. 40A:10-21.1 ), 43 ( N.J.S.A. 52:14-17.34a ), 44 ( N.J.S.A. 40A:5A-11.1 ), 77 ( N.J.S.A. 52:14-17.28e ), 78 ( N.J.S.A. 18A:16-17.2 ), 79 ( N.J.S.A. 40A:10-21.2 ); DePascale v. State, 211 N.J. 40, 43, 47 A.3d 690 (2012) ("Chapter 78 increases the amount that all public employees must contribute to their pension and health care insurance plans.").
A new statute, N.J.S.A. 40A:10-21.1, codified Chapter 78's changes as they affect local government employees retiring after twenty-five years of service or after fifteen years of service who are at least sixty-two years old for whom Section 23 permits their employers to assume a portion of their health care costs.[3] N.J.S.A. 40A:10-21.1 provides in pertinent part:
*417 b. (1) Notwithstanding the provisions of any other law to the contrary, public employees of an employer, as those employees are specified in paragraph (2) of this subsection, shall contribute, through the withholding of the contribution from the monthly retirement allowance, toward the cost of health care benefits coverage for the employee in retirement and any dependent provided pursuant to N.J.S.[A.] 40A:10-16 [to -34.3], unless the provisions of subsection c. of this section apply, in an amount that shall be determined in accordance with section 39 of P.L.2011, c. 78 ( [N.J.S.A.] 52:14-17.28c ) using the percentage applicable to the range within which the annual retirement *400 allowance, and any future cost of living adjustments thereto, falls. The retirement allowance, and any future cost of living adjustments thereto, shall be used to identify the percentage of the cost of coverage.
(2) The contribution specified in paragraph (1) of this subsection shall apply to:
(a) employees of employers for whom there is a majority representative for collective negotiations purposes who accrue the number of years of service credit, and age if required, as specified in N.J.S.[A.] 40A:10-23, or on or after the expiration of an applicable binding collective negotiations agreement in force on that effective date, and who retire on or after that effective date or expiration date, excepting employees who elect deferred retirement, when the employer has assumed payment obligations for health care benefits in retirement for such an employee; ...
....
(3) Employees described in paragraph (2) of this subsection who have 20 or more years of creditable service in one or more State or locally-administered retirement systems on the effective date of P.L.2011, c. 78 shall not be subject to the provisions of this subsection.
The amount payable by a retiree under this subsection shall not under any circumstance be less than the 1.5 percent of the monthly retirement allowance, including any future cost of living adjustments thereto, that is provided for such a retiree, if applicable to that retiree, under subsection b. of N.J.S.[A.] 40A:10-23. A retiree who pays the contribution required under this subsection shall not also be required to pay the contribution of 1.5 percent of the monthly retirement allowance under subsection b. of N.J.S.[A.] 40A:10-23.
....
d. ...
....
As may be permitted by law or otherwise, the authority to determine an amount of contribution ... by means of a binding collective negotiations agreement... shall remain in effect with regard to contributions, whether as a share of the cost, or percentage of the premium or periodic charge, or otherwise, in addition to the contributions required under subsection s a. and b. of this section.
*418 [ N.J.S.A. 40A:10-21.1(b)(1), (b)(2)(a), (b)(3) and (d) (emphasis added).]
Accordingly, but for those local government employees having twenty or more years of service on the effective date of Chapter 78 (who are exempted by subsection (b)(3) ), subsection (b)(2)(a) requires all employees who accrue the necessary service credit and age required by Section 23, on or after the expiration of a CNA in force on the effective date of Chapter 78 for whom the employer has agreed to assume some portion of their health care costs, to contribute to those costs in accordance with subsection (b)(1) by the withholding from their monthly retirement allowance the amount specified by the schedule set forth in N.J.S.A. 52:14-17.28c, using the percentage applicable to the amount of their annual retirement allowance. Significantly, however, subsection (d) expressly provides "the authority to determine an amount of contribution... by means of a binding collective negotiations agreement ... shall remain in effect with regard to contributions... in addition to the contributions required under subsection [ ] ... b. of this section." N.J.S.A. 40A:10-21.1(d) (emphasis added).
*401 Reading Section 23, the statute that authorizes local government employers to assume a portion of the cost of health care coverage for a limited class of retirees, together with N.J.S.A. 40A:10-21.1, the new statute that requires eligible retirees to shoulder more of the costs of their health care, makes clear Chapter 78 limited the ability of local governments to assume as much of the cost of that coverage as before. It certainly cannot be reasonably read to force county and municipal employers electing to pay a portion of that coverage under Section 23 to assume a greater percentage of the costs. As Chapter 2 preserved the authority of employers electing to provide discretionary health care coverage to eligible retirees under Section 23 to negotiate rates for retirees higher than the 1.5 percent floor, so Chapter 78 plainly preserves the authority of such employers to negotiate rates for eligible retirees higher than the percentages required by the progressive schedule of N.J.S.A. 52:14-17.28c. Compare L.
*419 2010, c. 2, § 15, and N.J.S.A. 40A:10-23(b), with L. 2011, c. 78, § 42, and N.J.S.A. 40A:10-21.1(d).
The Association resists the plain meaning of the words of N.J.S.A. 40A:10-21.1(d) that permit the parties to negotiate contribution rates higher than those set by N.J.S.A. 52:14-17.28c for eligible retirees under Section 23[4] by asserting the only deviation from those contribution rates is the one permitted by the procedure set forth in N.J.S.A. 40A:10-21.1(c),[5] which *402 was not followed *420 here. Leaving aside the plain language of subsection (d) allowing generally for higher contribution rates, subsection (c) addresses local government employers not participating in the State Health Benefits Program (SHBP) that design their own plans to have different contribution rates. It provides, as relevant here, that
[a] local unit may enter into a contract... to provide health care benefits ... to implement a duly executed collective negotiations agreement, and may provide through such agreement for an amount of employee or retiree contribution ... that is other than the percentage required under subsection a. or b., or both, of this section, if the total aggregate savings ... from such contributions or plan design... equals or exceeds the annual savings that would have resulted had those employees or retirees made the contributions required under subsection a. or b., or both, of this section plus the annual savings resulting to the plans within the State Health Benefits Program as a result of plan design changes made pursuant to P.L.2011, c. 78.
[ N.J.S.A. 40A:10-21.1(c) (emphasis added).]
See also S. Budget & Appropriations Comm. Statement to S. 2937 4 (June 16, 2011) ("The bill allows ... units of local government, that do not participate in the SHBP ..., to enter into contracts for health care benefits coverage, as may be required to implement a collective negotiations agreement, and agree to different employee contribution rates if certain cost savings in the aggregate over the period of the agreement can be demonstrated.").
*421 Although the City is not a participant in the SHBP, the Association certified to PERC that "the City applies [the N.J.S.A. 52:14-17.28c ] percentages to its current employees." Moreover, neither party has contended the City designed its health benefit plans with contribution rates differing from those of N.J.S.A. 52:14-17.28c so as to qualify for treatment under N.J.S.A. 40A:10-21.1(c). In the absence of any indication in the record that the City has designed its health benefits plans with different contribution rates than those provided in N.J.S.A. 52:14-17.28c, we decline to hold subsection (c) is applicable here.
Finally, we reject the Association's argument that PERC's interpretation of Chapter 78 is at odds with the Legislature's goal of ensuring that lower-paid employees and retirees pay a smaller percentage of their health care costs than higher-paid ones. Although we do not disagree that one of the hallmarks of Chapter 78 is its progressive rate structure, the rate structure imposed by N.J.S.A. 40A:10-21.1(b) as it relates to retirees must be understood with reference to Section 23. See Chasin, 159 N.J. at 428, 732 A.2d 457.
Simply stated, in requiring eligible employees to contribute in accordance with a progressive rate structure to the cost of any coverage their employers may elect to fund under Section 23, Chapter 78 left intact the employer's authority to choose to fund the coverage and the level at *403 which it would do so. Because N.J.S.A. 40A:10-21.1(d) expressly reserves to the employer the authority to negotiate greater contributions to those costs than those required under N.J.S.A. 40A:10-21.1(b), the rate structure is plainly subordinate to the employer's authority to assume a lesser percentage of the cost of the coverage. Accordingly, we do not conclude PERC's interpretation of Chapter 78 is at odds with "the scheme of the statute as a whole." See Chasin, 159 N.J. at 427, 732 A.2d 457.
In sum, we agree with PERC that Article XXI of the parties' 2015 contract requiring eligible retirees to pay fifty percent of the *422 cost of their health care coverage is not preempted by N.J.S.A. 40A:10-21.1.
Affirmed.

The provision provides in pertinent part:
ARTICLE XXI-HEALTH AND WELFARE
....
COORDINATION OF BENEFITS
....
C. For those employees hired prior to December 31, 1998 the City will assume fifty (50%) percent of health and welfare benefits for those employees who have twenty-five (25) years or more of service with the City or are sixty-two (62) years of age and fifteen (15) years of service.
For those employees hired after January 1, 1999 the City will assume fifty (50%) percent of health and welfare benefits for those employees who have twenty-five years of service or more service with the City or are sixty-two (62) years of age and twenty (20) years of service.
The level of coverage will be equivalent to coverage provided to active employees.
Co-pays, deductibles and/or eligible benefits are subject to collective bargaining and are therefore subject to change. Medicare will be primary health coverage when retiree turns sixty-five (65).
D. All employees who retire under the Public Employees Retirement System having less service time than specified in Section D [sic] above shall be given the option of continuing their health and welfare benefits as provided to them as current employees at the per-person group cost which the City incurs.

Chapter 78 took effect on June 28, 2011, L. 2011, c. 78, § 83, post-dating the parties' 2011-2014 CNA, which took effect January 1, 2011.

This opinion is limited to a discussion of the effect of Chapter 78 on the ability of local governments to negotiate payment of health benefits for employees retiring with the service credit and age permitted by Section 23. For an analysis of the effect of Chapter 78 on local government employees retiring on a disability pension, see Brick Township PBA Local 230 v. Township of Brick, 446 N.J. Super. 61, 63, 140 A.3d 577 (App. Div. 2016).

The Association further argues that "[i]nsofar as the parties to a collectively negotiated agreement had any discretion over health care contributions under N.J.S.A. 40A:10-21.1(d), it was only for agreements already in place as of the effective date of Chapter 78." The Association relies for that argument on the language in the first paragraph of subsection (d), which states that "[t]he contribution under subsection a. of this section shall commence: (1) upon the effective date of P.L.2011, c. 78" for employees without a majority representative for collective negotiations purposes, "and (2) upon the expiration of any applicable binding collective negotiations agreement in force on that effective date for employees covered by that agreement." N.J.S.A. 40A:10-21.1(d) (emphasis added).
We find the argument without merit for two reasons. First, the language on which the Association relies clearly applies only to the contributions withheld "from the pay, salary, or other compensation" of active employees under subsection (a) of the statute and not the contributions withheld "from the monthly retirement allowance" of retirees under subsection (b). N.J.S.A. 40A:10-21.1(a), (b) and (d). Second, the unmistakably direct language of subsection (d) that
the authority to determine an amount of contribution ... by means of a binding collective negotiations agreement ... shall remain in effect with regard to contributions, whether as a share of the cost, or percentage of the premium or periodic charge, or otherwise, in addition to the contributions required under subsections a. and b. of this section,
makes clear the authority is not limited to CNAs already in place before Chapter 78 became law and the contribution rates existed. N.J.S.A. 40A:10-21.1(d) (emphasis added).

N.J.S.A. 40A:10-21.1(c) provides:
c. A local unit may enter into a contract or contracts to provide health care benefits, including prescription drug benefits and other health care benefits, as may be required to implement a duly executed collective negotiations agreement, and may provide through such agreement for an amount of employee or retiree contribution as a cost share or premium share that is other than the percentage required under subsection a. or b., or both, of this section, if the total aggregate savings during the term of that agreement from such contributions or plan design, or both, from that agreement as applied to employees and retirees covered by that agreement, and to employees and retirees not covered by that agreement but to whom the agreement has been applied by the employer, if any, equals or exceeds the annual savings that would have resulted had those employees or retirees made the contributions required under subsection a. or b., or both, of this section plus the annual savings resulting to the plans within the State Health Benefits Program as a result of plan design changes made pursuant to P.L.2011, c. 78.
A local unit shall certify the savings in writing to the Division of Local Government Services in the Department of Community Affairs and the Division of Pensions and Benefits in the Department of the Treasury. The Department of Community Affairs shall review and approve or reject the certification within 30 days of receipt. The certification shall be deemed approved if not rejected within that time. The agreement shall not be executed until that approval is received or the 30-day period has lapsed, whichever occurs first.