**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4232-18T3

IN THE MATTER OF
MATAWAN-ABERDEEN
REGIONAL BOARD OF
EDUCATION,

      Petitioner-Appellant,

and

MATAWAN-ABERDEEN
REGIONAL EDUCATION
ASSOCIATION,

      Respondent-Respondent.

_____

Argued telephonically June 1, 2020 –
Decided July 27, 2020

Before Judges Sumners and Geiger.

On appeal from the New Jersey Public Employment
Relations Commission, P.E.R.C. No. 2018-048.

Joshua I. Savitz argued the cause for appellant (Weiner
Law Group LLP, attorneys; Joshua I. Savitz, of counsel
and on the briefs).

Craig A. Long argued the cause for respondent Matawan-Aberdeen Education Association (Zazzali Fagella Nowak Kleinbaum & Friedman, PC, attorneys; Richard A. Friedman, of counsel and on the brief; Craig A. Long, on the brief).

Christine R. Lucarelli, General Counsel, argued the cause for respondent Public Employment Relations Commission.

PER CURIAM

This appeal requires us to determine whether the New Jersey Public Employment Relations Commission (PERC) misinterpreted L. 2011, c. 78, §§ 39 and 41 (Chapter 78), codified at N.J.S.A. 52:14-17.28c and N.J.S.A. 18A:16-17.1, in ruling the Matawan-Aberdeen Regional Board of Education (the Board) was obligated to negotiate the shift in dental insurance premium costs from the Board to members of the Matawan-Aberdeen Regional Education Association (the Association) when the Board decided to replace the members' public health insurance provider with a private health insurance provider. Because we conclude PERC correctly interpreted Chapter 78 does not preempt the parties' collective negotiation agreements (CNAs or agreements) when the Board voluntarily switched providers, and the Association's grievance regarding payment of dental coverage is subject to arbitration, we affirm.

I

The Board is a public employer under the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -5.9. The Association represents Board employees collectively organized in four bargaining units: (1) teachers; (2) clerical employees, assistants, and technicians; (3) bus drivers; and (4) custodians and maintenance workers. The Board and the Association entered into CNAs with each unit for the period of July 1, 2014 through June 30, 2017. In pertinent part, each CNA provides:

> The Board will continue to pay all premiums to provide each employee for the duration of this [a]greement the New Jersey Dental Service Plan (known as the Delta Incentive Plan) family coverage, including domestic partner.

The CNAs afford a four-step grievance procedure to address allegations of a violation of the agreement, culminating in binding arbitration.

At its meeting on February 27, 2017, the Board adopted a resolution terminating its participation in the School Employees' Health Benefits Plan ("SEHBP") as of May 1, 2017. Within the week, the Board's school business administrator announced the change to all employees and informed them of the new private plan and private health insurance provider, Horizon Blue Cross Blue Shield of New Jersey (Horizon). Under this new plan, payment of dental

coverage would be the responsibility of each employee, in contrast to the SEHBP, which included dental coverage paid by the Board.

About two weeks later, the Association filed a grievance stating the Board needed to "continue to pay all premiums related to the New Jersey Dental Service Plan (Dental Incentive Plan) as stated in the [CNAs,]" because there should be "[n]o employee contribution towards dental coverage." The Board denied the grievance, but the parties agreed to place the CNA grievance process on hold while they attempted to resolve their dispute.

After an accord could not be reached, the Association filed an unfair labor practice charge alleging the Board violated N.J.S.A. 34:13A-5.4(a)(1), (3), and (5), by unilaterally requiring staff to contribute to the previously covered dental coverage premiums. The Board opposed the allegation. PERC deferred the matter to the parties' CNA grievance and arbitration process. Approximately ten days later, the Association filed a request with PERC to establish a panel of arbitrators. About a month later, before a panel of arbitrators had been established, the Board filed a scope of negotiations petition with PERC seeking to permanently and temporarily restrain the arbitration proceedings.

Following review of the parties' briefs, PERC issued an eleven-page decision and order on April 25, 2019, finding the dental coverage payment issue

4

mandatorily negotiable and legally arbitrable. The final agency decision noted its jurisdiction was limited to addressing whether "the subject matter in dispute [is] within the scope of collective negotiations." Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 154 (1978). Thus, the merits of the issue were properly not determined by PERC.

II

On appeal, the Board contends PERC's decision was erroneous, arbitrary, capricious, or unreasonable because the Board had the unilateral right to change health insurance providers under Chapter 78 without paying the Association members' dental coverage, and it was contrary to its recent ruling involving the same situation in In re Readington Tp. Bd. of Ed., P.E.R.C. No. 2017-018, 43 NJPER 128 (2016).

The Board asserts that based on the provisions of N.J.S.A. 52:14-17.28c it had the managerial right not to renew its contract with the SEHBP and instead contract with a private health insurance provider, regardless of whether it included dental coverage. The Board submits it exercised "its legal right to change carriers" which "does not somehow negate the fact . . . it was [then] obligated by N.J.S.A. 52:14-17.28c to have the employees pay for their dental

benefits." As such, the Board maintains arbitration should be permanently restrained.

Although this matter involves employer and employee relations, we "owe no particular deference to PERC's interpretation of Chapter[] . . . 78[,]" because the agency "is not charged with administering [the law]." In re New Brunswick Mun. Emps. Ass'n, 453 N.J. Super. 408, 416 (App. Div. 2018). Thus, our review is de novo. State v. Frank, 445 N.J. Super. 98, 105 (App. Div. 2016). That said, we do not take issue with PERC's interpretation of Chapter 78 in the context of its application of the three-prong balancing test set forth in In re Local 195, IFPTE, AFL-CIO v. State, 88 N.J. 393, 404-05 (1982) as mandated in In re City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 575 (1998), to determine whether the Association's grievance is within the scope of collective negotiations.

The Court in Local 195, declared:

> [A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy.
>
> [88 N.J. at 404-05.]

Under these guidelines, PERC determined the parties' dispute was mandatorily negotiable and legally arbitrable.

PERC found the first prong was applicable because "the allocation of dental premiums intimately and directly affects the work and welfare of employees."

As to the second prong, PERC concluded Chapter 78 did not preempt the CNAs' provisions requiring negotiation of health insurance benefits. In accordance with Council of N.J. State Coll. Locals v. State Bd. of Higher Educ., 91 N.J. 18, 30 (1982) and Bethlehem Tp. Bd. of Ed. v. Bethlehem Tp. Ed. Ass'n, 91 N.J. 38, 44-45 (1982), PERC held "[w]here a statute or regulation is alleged to preempt an otherwise negotiable term or condition of employment, it must do so expressly, specifically and comprehensively." Based on the parties' certifications, PERC determined by the end of the 2014-2015 school year the Association members had completed full implementation of the fourth tier of health insurance contributions required by Chapter 78. Because of this full implementation, PERC found the members' contributions were required to stay "at the fourth tier level until the next successor agreement after full implementation, when any negotiated changes could be implemented."

<u>Clementon Bd. of Educ. v Clementon Educ. Ass'n</u>, P.E.R.C. No. 2016-10, 42 NJPER 34 (2015).

PERC acknowledged the Board's argument that N.J.S.A. 52:14-17.28c preempted the dispute because "once it moved to a private plan on May 1, 2017, it was statutorily required to include dental insurance premiums in the cost of coverage." PERC noted the statute's definition of "cost of coverage" as:

> As used in this section, "cost of coverage" means the premium or periodic charges for medical and prescription drug plan coverage, but <u>not for dental</u>, vision, or other health care, <u>provided under</u> the State Health Benefits Program or <u>the School Employees' Health Benefits Program</u>; or the premium or periodic charges for health care, prescription drug, dental, and vision benefits, and for any other health care benefit, provided pursuant to [other statutes.]
>
> [N.J.S.A. 52:14-17.28c (emphasis added).]

PERC interpreted the statute's plain language to mean "when an employer participates in the SEHBP, the cost of coverage excludes charges for dental coverage, but when an employer utilizes a private plan, the cost of coverage includes charges for dental coverage." PERC recognized this interpretation was consistent with Board's position but found it did not control this dispute with the Association because the Board <u>voluntarily</u> choose to change from SEHBP to a private plan. PERC determined nothing in Chapter 78, nor any other law,

required the Board to switch to a private plan, which would not include payment of dental premiums. This unilateral and discretionary change, according to PERC, made a significant difference.

PERC found the Board's choice to change created a situation where the Board "failed to fulfill a contractual commitment under the CNA[s] to cover the full cost of dental coverage." Considering this, PERC held the primary issue is not "whether N.J.S.A. 52:14-17.28c preempts[,]" but "whether an employer's choice to change carriers is mandatorily negotiable and legally arbitrable when it impacts the allocation of dental insurance premiums."

With respect to the third prong, PERC found "negotiations or arbitration over this dispute, as we have defined it . . . [in prong two], would not significantly interfere with governmental policy." Relying upon its rulings in Borough of Metuchen, P.E.R.C. No. 84-91, 10 NJPER 127 (1984) and Union Twp., P.E.R.C. No. 2002-55, 28 NJPER 198 (2002), PERC held "[a]n employer's choice of health insurance carriers is mandatorily negotiable when changing the identity of the carrier changes terms and conditions of employment, 'i.e., the level of insurance benefits, or the administration of the plan.'"

Finding the shifting of payment for dental premiums from employer to employee as affecting "both the level of insurance benefits and the administration of the plan[,]" PERC, citing Bridgewater Twp., P.E.R.C. No 95-28, 20 NJPER 399, 401 (1994), aff'd 21 NJPER 401 (App. Div. 1995) (finding the Township was required to negotiate a term and condition of employment when it unilaterally deducted HMO premium payments from employees despite language in CNAs clearly provided no charge for the coverage), held "the allocation of health insurance premiums is a negotiable term and condition of employment."  PERC also stated the Board's interest in choosing a health insurance carrier was outweighed by the employee's interest in having the Board fulfill the agreements' commitments.

Our review of PERC's interpretation of Chapter 78 and its application of Local 195, lead us to conclude it was not arbitrary, capricious, or unreasonable in ordering the Association's grievance regarding the Board's decision not to pay for members' dental plan is mandatorily negotiable and is arbitrable given their dispute.  See Jersey City Police Officers Benevolent Ass'n, 154 N.J. at 568 (citations omitted) (holding a PERC decision that is not "arbitrary or capricious" will not be disturbed).

The goal of "statutory interpretation is to determine and 'effectuate the Legislature's intent,'" by considering "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). Nevertheless, a statute's plain language "should not be read in isolation, but in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). "When all is said and done, the matter of statutory construction . . . will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation." Jersey City Chapter, P.O.P.A. v. Jersey City, 55 N.J. 86, 100 (1969). Thus, "where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control." Hubbard v. Reed, 168 N.J. 387, 392 (2001) (quoting Turner v. First Union Nat'l Bank, 162 N.J. 75, 84 (1999)); see also Gallagher v. Irvington, 190 N.J. Super. 394, 397 (App. Div. 1983) ("[a]n absurd result must be avoided in interpreting a statute").

While N.J.S.A. 52:14-17.28c recognizes dental insurance coverage is not part of a private plan as it is with the SEHBP, the statute does not state if an

employer voluntarily chooses to switch to a private plan, employees must pay for the dental coverage even in the face of a CNA provision clearly stating the "Board will continue to pay all premiums to provide each employee for the duration of this Agreement the New Jersey Dental Service Plan (known as the Delta Incentive Plan) family coverage . . . ." We agree with the Association that the language of the statutory preemption is irrelevant because the fact that it was a voluntary non-mandated change in health insurance providers requires this dispute to be arbitrated as a mandatorily negotiable and legally arbitrable issue.

We are unpersuaded by the Board's assertion PERC is bound by its ruling made just two years earlier in In re Readington Twp. Bd. of Ed., P.E.R.C. No. 2017-018, 43 NJPER 128 (2016), which held N.J.S.A. 52:14-17.28c preempted mandatory negotiation obligations. There, PERC held  employees had to pay one hundred percent of the their dental premiums after the Readington Board of Education switched from SEHBP to a private carrier in accordance N.J.S.A. 52:14-17.28c despite the terms of their CNA providing the cost of dental coverage was to be paid by the Board. Id. at 128. PERC granted the Readington Board's restraint on arbitration stating the Board had "exercised its managerial prerogative to select a private health insurance carrier and stop[] paying 100%

of the premium cost of dental coverage" and negotiations were preempted by

N.J.S.A. 52:14-17.28c and N.J.S.A. 18A:16-17.2.[1] <u>Ibid.</u>

---

[1] N.J.S.A. 18A:16-17.2 provides:

> A public employer and employees who are in negotiations for the next collective negotiations agreement to be executed after the employees in that unit have reached full implementation of the premium share set forth in section 39 of P.L. 2011, c. 78 (C.52:14-17.28c) shall conduct negotiations concerning contributions for health care benefits as if the full premium share was included in the prior contract. The public employers and public employees shall remain bound by the provisions of sections 39 and 41 of P.L. 2011, c. 78 (C.52:14-17.28c and C.18A:16-17.1), notwithstanding the expiration of those sections, until the full amount of the contribution required by section 39 has been implemented in accordance with the schedule set forth in section 41.

> Employees subject to any collective negotiations agreement in effect on the effective date of P.L. 2011, c. 78, that has an expiration date on or after the expiration of sections 39 through 44, inclusive, of P.L. 2011, c. 78 (C.52:14-17.28c et al.), shall be subject, upon expiration of that collective negotiations agreement, to sections 39 and 41 until the health care contribution schedule set forth in section 41 is fully implemented.

> After full implementation, those contribution levels shall become part of the parties' collective negotiations and shall then be subject to collective negotiations in a

Although admitting In re Readington Twp. Bd. of Ed. has "substantially similar facts in which [a board of education] began to charge employees for the cost of dental coverage once it moved from the SEHBP to a private carrier, despite language in the CNA stating that the [b]oard shall pay the full cost of dental coverage[,]" PERC rejected the contention it had to make the same ruling. PERC parted company from that ruling, stating:

> We held that N.J.S.A. 52:14-17.28c preempted the dispute. However, we depart from Readington defining that issue as the focus of this dispute. As set forth above, we find this dispute centers upon whether an employer's voluntary choice to change carriers is mandatorily negotiable and legally arbitrable when it impacts the allocation of dental insurance premiums. Readington did not focus on or address that aspect of the dispute.

We find PERC's analysis distinguishing the within situation from In re Readington Twp. Bd. of Ed. to be lacking depth and clarity. Nevertheless, for the reasons we discussed above, we conclude PERC was right in reaching a different decision here. The Association points to In re Masiello, 25 N.J. 590, 598 (1958), where our Supreme Court held even though "constancy of decision is desirable" there is an acknowledgement "[i]n the field of administrative law

---

manner similar to other negotiable items between the parties.

generally the doctrine of stare decisis has not had the same forceful impact as it has had in the common law." (Citations omitted). Thus, administrative agencies, such as PERC, can depart from prior rulings when such decisions are "brought about by general policy considerations or the need therefore becomes manifest through experience." Ibid. Moreover, considering neither this court nor our Supreme Court were asked to review PERC's ruling in Readington Twp. Bd. of Ed., there is no binding precedent restricting PERC from reconsidering that ruling and reaching a different decision here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4232-18T3