**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0277-23

IN THE MATTER OF RUTGERS,
THE STATE UNIVERSITY OF
NEW JERSEY,

     Petitioner-Appellant,

and

AFSCME LOCAL 888, AMERICAN
FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO,

     Respondent-Respondent.

_____

Argued December 3, 2024 – Decided December 13, 2024

Before Judges Perez Friscia and Bergman.

On appeal from the New Jersey Public Employment Relations Commission, PERC Nos. 2023-028 and 2023-029.

Michael O'B. Boldt argued the cause for appellant (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; John J. Peirano and Stephen F. Payerle, of counsel and on the briefs).

Seth Gollin argued the cause for respondent AFSCME Local 888 (AFSCME, attorneys; Kevin P. McGovern, on the brief).

William J. Campbell, IV, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli-Carneiro, General Counsel, attorney; William J. Campbell, IV, on the brief).

PER CURIAM

Appellant Rutgers, the State University of New Jersey, appeals from the August 24, 2023 Public Employment Relations Commission (PERC) decision, which denied its petition to restrain disciplinary grievance arbitrations requested by AFSCME Local 888, American Federation of State, County and Municipal Employees, AFL-CIO (Local 888), as preempted under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 to 1688, and governing 2020 Title IX Regulations, 34 C.F.R. §§ 106.1 to 106.82 (Title IX Regulations). Having considered the parties' arguments in light of the record and applicable legal principles, we affirm.

## I.

To give context to the issues presented, we summarize the facts and procedural history in view of the governing statutory and regulatory framework. Congress adopted Title IX, mandating that educational institutions that receive

federal financial assistance must prohibit discrimination and ensure that "[n]o person . . . on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity." 20 U.S.C. § 1681(a); L.W. ex rel. Toms River Reg'l Schs. Bd. of Educ., 189 N.J. 381, 404 (2007) (alteration in original) (quoting 20 U.S.C. § 1681(a)). Title IX is remedial legislation enacted "with two principal objectives in mind: 'to avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those practices.'" Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998) (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979)). The United States Department of Education (USDOE), as authorized by 20 U.S.C. § 1682, implemented regulations "to effectuate Title IX" by "eliminat[ing] (with certain exceptions) discrimination on the basis of sex in any education program or activity." See 34 C.F.R. § 106.1. The USDOE adopted § 106.45 (2020)[1] to codify a detailed "[g]rievance process for formal complaints of sexual harassment."

---

[1] We note on April 29, 2024, the USDOE adopted amendments to 34 C.F.R. § 106.45, which became effective as of August 1. Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33474, 33891 (Apr. 29, 2024) (codified at 34 C.F.R. § 106.45).

A-0277-23

Rutgers received federal education funds as a public research university. In 2020, Rutgers adopted the Rutgers Title IX Policy and Grievance Procedures, Policy 60.1.33 (Rutgers Title IX Policy), to comply with Title IX requirements and "foster[] an environment that is safe and secure and free from sexual discrimination and harassment, sexual violence, dating and domestic violence, and stalking." Rutgers Title IX Policy, 1.

Local 888 was the exclusive collective representative for certain Rutgers employees. In March 2019, Rutgers entered a collective negotiations agreement (CNA) with Local 888, providing for "the establishment of procedures for the presentation and resolution of grievances." Under the CNA, Rutgers recognized Local 888 "as the sole and exclusive negotiations representative concerning . . . conditions of employment."

In February 2022, a female Rutgers employee submitted a formal complaint to the Office of Employment Equity (OEE), alleging J.M.[2] had sexually harassed her. The complainant and J.M. worked together as custodial staff for Rutgers. Both were members of Local 888. The complainant alleged J.M. engaged in a course of sexually harassing verbal conduct, physically

---

[2] We use initials for the confidentiality of the victim. R. 1:38-3(a)(1).

assaulted her, and retaliated by not performing his work and increasing her workload.

After the Rutgers Title IX coordinator found the complaint involved sexual harassment, the associate director of the OEE investigated the complaint. Following an investigation, J.M. was charged with two violations of the Rutgers Title IX Policy and one violation of the University Policy Prohibiting Discrimination and Harassment (University Harassment Policy). Hearing Officers Ralph J. Marra, Jr. and John Malley served as decision-makers and held an evidentiary hearing on July 21. Rutgers appointed Marra to serve as the first decision-maker to determine if J.M. was responsible for violating Title IX. Malley, a Rutgers employee, served as the second decision-maker, responsible for determining whether a sanction was appropriate for J.M.'s violation of Title IX and the University Harassment Policy. Rutgers appointed private counsel to serve as J.M.'s advisor[3] because he had not selected an advisor for the proceedings.

---

[3] Pursuant to the Rutgers Title IX Policy, the "[p]arties have the right to select an [a]dvisor of their choosing to conduct cross-examination at the hearing. A [p]arty's [a]dvisor of choice may be, but does not need to be, an attorney." Rutgers Title IX Policy, 6(VIII)(G)(2).

In a ten-page written decision issued after the evidentiary hearing, Marra found J.M. committed sexual harassment and "physical conduct of a sexual nature." Malley also determined there was just cause to terminate J.M. and "recommend[ed] dismissal pursuant to [the Rutgers Title IX Policy] and University Policy 60.1.12, because [J.M.]'s behavior was clearly in violation of the [Rutgers] Title IX Policy . . . and the University . . . Harassment [Policy]." The decision noted the Title IX coordinator would reach out to the complainant regarding appropriate remedies after the "outcome bec[a]me[] final." Further, it provided J.M. was "afforded one appeal of th[e] decision." The decision provided the "grounds for appeal [we]re": "[p]rocedural irregularity that affected the outcome of the matter"; "[n]ew information"; and "[a] conflict of interest or bias."

On August 2, J.M. appealed the decision under Rutgers' Title IX grievance process. A Rutgers' employee, the University Human Resources Assistant Vice President, served as the appellate decision-maker and denied J.M.'s appeal. Malley, by letter dated September 26, advised J.M. that Rutgers was terminating his employment "effective immediately."

A-0277-23

Thereafter, because two Local 888 members, I.R.M.[4] and J.M., were found responsible for Title IX violations and recommended for termination, Local 888 filed official grievances with Rutgers under the CNA. On September 14, Local 888 filed an official grievance and a meeting request on J.M's behalf, seeking to challenge Rutgers' decision that J.M. "was terminated for just cause." Rutgers denied Local 888's request. On October 3, Local 888, pursuant to Article 4 of the CNA, submitted to PERC a request for a panel of arbitrators to determine whether J.M. "was terminated for just cause." Article 4, paragraph 1 of the CNA provided a grievance procedure for "any difference or dispute" related to "terms or conditions of employment of the employees," and the procedures in the agreement were the "exclusive remedy." Paragraph 3 stated, "If [Local 888] is not satisfied with the written decision of the Rutgers representative, [Local 888] may, within thirty (30) calendar days after the receipt of the written decision of the Rutgers representative, submit the grievance to binding arbitration." Further, paragraph 8 stated, "No employee shall be discharged, . . . except for just cause. The sole right and remedy of any employee who claims that he or

---

[4] After Rutgers filed this appeal, Local 888 withdrew its filed grievance as to I.R.M. Therefore, we only address Local 888's CNA request for arbitration regarding J.M.'s termination.

she has been discharged . . . without just cause shall be to file a grievance through and in accordance with the grievance procedure." Rutgers and Local 888's selection of an arbitrator was to comport with PERC's rules and procedures.

After Local 888 requested arbitration, on February 2, 2023, Rutgers petitioned PERC for a scope of negotiations determination to restrain the arbitration of the grievance Local 888 filed. In a March certification opposing Rutgers' petition, Local 888 contended Article 4 of the CNA was binding because "the [Title IX] decision impact[ed] the[] terms and conditions of [J.M.'s] employment."

On August 24, PERC issued a unanimous final decision and order, determining Title IX did not preclude arbitration of disciplinary matters and denying Rutgers' request "for restraints of binding arbitration." PERC concluded the Title IX Regulations, which required a grievance process for formal sexual harassment complaints, did not preempt a represented employee's grievance arbitration of discipline imposed after a Title IX finding of misconduct. PERC noted Local 888 had negotiated and entered the CNA with Rutgers, providing for "contractual disciplinary procedures, including binding arbitration." PERC found no conflict between the CNA grievance procedure

8

and Rutgers' Title IX grievance process, which was limited in scope and provided J.M. no right to appeal based on the severity of Rutgers' sanction.

On appeal, Rutgers contends reversal of PERC's decision denying Rutgers' request for a restraint of binding arbitration is warranted because: the Title IX Regulations explicitly preempted the matter, and, alternatively, government policy would be impaired; the Title IX Regulations have a preemptive effect; and the grievance arbitration Local 888 sought conflicts with the Title IX Regulations.

## II.

Our Supreme Court has long recognized the legislative "mandate[] that judicial review of PERC's decisions and orders shall be of a very limited scope." Galloway Twp. Bd. of Educ. v. Galloway Twp. Educ. Ass'n, 78 N.J. 25, 35 (1978). We afford deference to a PERC decision "in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute." Township of Franklin v. Franklin Twp. PBA Loc. 154, 424 N.J. Super. 369, 377 (App. Div. 2012) (internal quotation marks omitted) (quoting CWA, Loc. 1034 v. N.J. State PBA, Loc. 203, 412 N.J. Super. 286, 291 (App. Div. 2010)). However, when PERC's decision is an interpretation of a

A-0277-23

statute or a determination of "a strictly legal issue," we review the determination de novo. See In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020) (internal quotation marks omitted) (quoting Saccone v. Bd. of Trs., PFRS, 219 N.J. 369, 380 (2014)).

PERC is authorized to determine "whether a matter in dispute is within the scope of collective negotiations." Rozenblit v. Lyles, 245 N.J. 105, 122 n.2 (2021) (quoting In re Ridgefield Park Bd. of Educ., 244 N.J. at 16); see also N.J.S.A. 34:13A-5.4(d). Further, "PERC is charged with administering the [New Jersey Employer-Employee Relations Act (EERA)], N.J.S.A. 34:13A-1 to -[64] and its interpretation of the Act." State, Div. of State Police v. N.J. State Trooper Captains Ass'n, 441 N.J. Super. 55, 63 (App. Div. 2015) (quoting CWA, Loc. 1034, 412 N.J. Super. at 291). "PERC's interpretation of the EERA is . . . entitled to substantial deference." In re Belleville Educ. Ass'n, 455 N.J. Super. 387, 398 (App. Div. 2018). Still, "[d]eference is not afforded when PERC's interpretation gives a provision of the [EERA] greater reach than the Legislature intended." Township of Franklin, 424 N.J. Super. at 378.

In adopting the EERA, the Legislature recognized public employees' "legitimate interest in engaging in collective negotiations about issues that affect 'terms and conditions of employment.'" In re Loc. 195, IFPTE, 88 N.J. 393, 401

(1982) (quoting N.J.S.A. 34:13A-5.3). The Supreme Court has recognized "PERC has primary jurisdiction to determine in the first instance whether a matter in dispute is within the scope of collective negotiations." In re Ridgefield Park Bd. of Educ., 244 N.J. at 16 (quoting In re New Brunswick Mun. Emps. Ass'n, 453 N.J. Super. 408, 413 (App. Div. 2018) (citing N.J.S.A. 34:13A-5.4(d))). Such subject matter includes either "mandatorily negotiable terms and conditions of employment [or] non-negotiable matters of governmental policy." Old Bridge Bd. of Educ. v. Old Bridge Bd. of Educ. Ass'n, 98 N.J. 523, 528 (1985) (quoting In re Loc. 195, IFPTE, 88 N.J. at 402).

## III.

Rutgers contends the Title IX Regulations preempted the CNA, which, pursuant to Article 4, permitted Local 888 to bring a request for arbitration on J.M.'s behalf to challenge his termination "for just cause." Specifically, Rutgers maintains PERC's decision denying Rutgers' petition to restrain arbitration was in error. We are unpersuaded.

It is undisputed Article 4 of the CNA authorized Local 888 to seek arbitration on behalf of a member challenging discharge from employment. "N.J.S.A. 34:13A-5.3 provides that representatives selected by public employees for collective negotiating purposes 'shall be the exclusive

11

A-0277-23

representatives for collective negotiation concerning the terms and conditions of employment.'" Troy v. Rutgers, 168 N.J. 354, 372 (2001) (quoting N.J.S.A. 34:13A-5.3). Specifically, Article 4, paragraph 3 of the CNA mandated that Local 888 could challenge a Rutgers' written decision by "submit[ting] the grievance to binding arbitration."

In public sector collective negotiations, employment issues fall into one of two categories: "'mandatorily negotiable terms and conditions of employment' and 'non-negotiable matters of governmental policy.'" Teaneck Bd. of Educ. v. Teaneck Tchrs. Ass'n, 94 N.J. 9, 14 (1983) (quoting Loc. 195, IFPTE, 88 N.J. at 402); see also Old Bridge Bd. of Educ., 98 N.J. at 528. "The scope of arbitrability is generally coextensive with the scope of negotiability." Old Bridge Bd. of Educ., 98 N.J. at 527. Our Supreme Court has established a three-part test for determining the scope of negotiations:

> [A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial

12

prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.

[Loc. 195, IFPTE, 88 N.J. at 404-05.]

"In the preemption inquiry, 'the mere existence of legislation relating to a given term or condition of employment does not automatically preclude negotiations.'" In re Ridgefield Park Bd. of Educ., 244 N.J. at 17 (quoting Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J. 38, 44 (1982)). Instead, "[n]egotiation is preempted only if the regulation fixes a term and condition of employment 'expressly, specifically and comprehensively.'" Id. at 17-18 (alteration in original) (quoting Bethlehem Twp. Bd. of Educ., 91 N.J. at 44). In applying the preemption standard, we are guided that:

> [T]he legislative provision must "speak in the imperative and leave nothing to the discretion of the public employer." If the legislation, which encompasses agency regulations, contemplates discretionary limits or sets a minimum or maximum term or condition, then negotiation will be confined within these limits. Thus, the rule established is that legislation "which expressly set[s] terms and conditions of employment . . . for public employees may not be contravened by negotiated agreement."
>
> [Id. at 18 (second alteration in original) (quoting Bethlehem Twp. Bd. of Educ., 91 N.J. at 44).]

Thus, we review de novo PERC's determination that the Title IX Regulations, which mandated a sexual harassment grievance process, did not preempt Local 888's request for arbitration filed after Rutgers' decision to terminate J.M. for committing sexual harassment. See id. at 17.

Rutgers contends the Title IX Regulations' "plain language and the legislative history" explicitly preempted any further grievance process and, alternatively, "establish[ed] preemptive intent." Specifically, because the Title IX Regulations mandated a detailed investigative and adjudicative grievance process for alleged Title IX violations, Rutgers contends an employee's further appeal of Rutgers' decision was precluded based on an intended preemptive effect.

It is undisputed Rutgers was required to comply with the Title IX Regulations as a recipient of federal funding. Rutgers followed the Title IX Regulations, which mandated a comprehensive grievance process to address formal sexual harassment complaints. In determining whether the Title IX Regulations preempted the CNA grievance procedure, a review of the plain language of 34 C.F.R. § 106.45 (2020) is required. When interpreting a statute, "our goal is to ascertain and effectuate the Legislature's intent." Rozenblit, 245 N.J. at 121 (quoting Kean Fed'n of Tchrs. v. Morell, 233 N.J. 566, 583 (2018))

(internal quotation marks omitted). "[T]he best indicator of that intent is the statutory language." Hoelz v. Bowers, 473 N.J. Super. 42, 54 (App. Div. 2022) (alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "Accordingly, '[t]he starting point of all statutory interpretation must be the language used in the enactment.'" Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (alteration in original) (quoting DCPP v. Y.N., 220 N.J. 165, 178 (2014)); see also J. H. v. R & M Tagliareni, LLC, 239 N.J. 198, 214 (2009) ("A 'regulation should be construed in accordance with the plain meaning of its language . . . .'" (quoting Medford Convalescent & Nursing Ctr. v. Div. of Med. Assistance & Health Servs., 218 N.J. Super. 1, 5 (App. Div. 1985))).

The Title IX Regulations mandated Rutgers provide safeguards to "complainants and respondents"[5] in determining sexual harassment responsibility and thereafter recommend sanctions. See § 106.45(b)(1)(i)-(x) (2020). The Title IX Regulations required Rutgers' "grievance process . . . provide for a live hearing" and for "decision-maker(s)" to make a "determination regarding responsibility." § 106.45(b)(6)(i), (7)(i)-(iii) (2020). Rutgers' had to provide "remedies to a complainant where a determination of responsibility for

_____

[5] We note 34 C.F.R. § 106.30 (2020), which was amended in 2024, defined respondent as "an individual who has been reported to be the perpetrator of conduct that could constitute sexual harassment."

harassment ha[d] been made against the respondent." § 106.45(b)(1)(i) (2020). Further, respondent had to be provided "a grievance process that complie[d] with" the Title IX Regulations "before the imposition of any disciplinary sanctions." Ibid.

After a decision-maker determined the responsibility of the accused party, a "Title IX Coordinator [wa]s responsible for effective implementation of any remedies." § 106.45(b)(7)(iv) (2020). Pursuant to §106.45(b)(1)(vi) (2020), Rutgers was required to provide the parties a description of the "range of possible disciplinary sanctions and remedies" and a "list [of] the possible disciplinary sanctions and remedies that [Rutgers] may implement following any determination of responsibility." Further, § 106.45(b)(8)(i) (2020) afforded "both parties an appeal from a determination regarding responsibility, and from [Rutgers'] dismissal of a formal complaint or any allegations therein." However, the Title IX Regulations did not specifically address appeals from a Title IX Coordinator's implementation of a recommended sanction.[6] Additionally, §

---

[6] In 2020, the USDOE issued a final rule amending the Title IX regulations; it explicitly "le[ft] to a recipient's discretion whether severity or proportionality of sanctions is an appropriate basis for appeal." Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30396 (May 19, 2020) (codified at § 106.45(b)(8) (2020)).

106.45(b)(8)(ii) (2020) permitted Rutgers to "offer an appeal equally to both parties on additional bases."

After ascribing the Title IX Regulations their plain meaning, we conclude Local 888's CNA request for arbitration, on behalf of J.M., is not preempted. The CNA authorized a review of Rutger's disciplinary decision through binding arbitration because the decision affected a Local 888 member's "conditions of employment" and was not specifically or partially preempted by the Title IX Regulations. Contrary to Rutgers' contention, no explicit Title IX Regulation dictated preemption of disciplinary sanctions. While we agree with Rutgers that the Title IX Regulations would have preempted a separate pre-discipline sexual harassment grievance process, Local 888's request for arbitration was filed after Rutgers' decision to "terminate [J.M.] for just cause."

Further, reading the Title IX Regulations together fails to demonstrate a preemptive intention or conflict precluding Local 888's independent grievance procedure under the CNA, which included a neutral review through binding arbitration of Rutgers' disciplinary sanction of a Local 888 member. See, e.g., N.J. Tpk. Auth. v. N.J. Tpk. Supervisors Ass'n, 143 N.J. 185, 195 (1996) (finding that under the EERA, an employer may negotiate disciplinary procedures, including binding arbitration, "provided those procedures neither

replace nor are inconsistent with any other statutory remedy").  Therefore, we discern no error with PERC's determination that Local 888, on behalf of J.M., may proceed under the CNA to challenge Rutgers' decision through grievance arbitration.

We further observe the decision-makers' written findings correctly stated, under the section titled "Right to Appeal," that J.M.'s "grounds for appeal" to the appellate decision-maker did not include "[d]isagreement with . . . the sanctions."  During the Title IX grievance process, Rutgers notified J.M. he was foreclosed from appealing Malley's "recommend[ed] dismissal" to the designated Rutgers employee serving as the appellate decision-maker.  The decision-makers' recited limited grounds for appeal were consistent with 34 C.F.R. § 106.45(b)(8)(i) (2020).  Again, under § 106.45(8)(b)(ii) (2020), Rutgers was permitted to "offer an appeal equally to both parties on additional bases."

Notably, Rutgers' Title IX Policy, specifically section 6(VIII)(L)(1), provided, "In all cases involving employee [r]espondents, the decision concerning discipline shall be consistent with the terms of all University Policies and the terms of any [CNA] that may be applicable."  (emphasis added).  Section 6(VIII)(L)(3) also stated, "For employees, sanctions may include discipline up

18

to and including termination of employment, consistent with the terms of all University Policies concerning personnel actions and the terms of any applicable [CNA]." Thus, Rutgers recognized a decision-maker's recommended disciplinary decision of termination, reached after an employee was determined to be responsible for sexual harassment, was to be in accord with Local 888's CNA.

Rutgers also maintains that if the Title IX Regulations did not preempt the CNA's grievance procedure, then Rutgers' "whole Title IX [g]rievance [p]rocess would be relegated to mere exercise and its outcome something that could be ignored, re-adjudicated, and negated in a separate process." We disagree. Rutgers' Title IX grievance process would not be negated because Local 888's grievance is limited to challenging J.M.'s discharge for just cause. Rutgers provides no authority demonstrating the grievance process under the Title IX Regulations was the sole disciplinary process for an employee deemed responsible for sexual harassment. Again, the Title IX grievance process provided Local 888, on behalf of J.M., no opportunity to appeal Rutgers' termination decision as a "term[] or condition[] of employment," and the CNA grievance procedure, through binding arbitration, permits an independent review.

We are also unpersuaded by Rutgers' argument that the complainant was precluded from pursuing a grievance under Article 4 of the CNA, based on the outcome of the Title IX grievance process. As a Local 888 member, the complainant was permitted to file a CNA grievance if she disagreed with the Title IX decision affecting a condition of her employment, as she and J.M worked closely together.

Finally, we are unpersuaded by Rutgers' contentions that the complainant would not receive notice, have an ability to participate, and have an opportunity to be considered in the arbitration. Rutgers correctly asserts that a victim's interest to be safe and free from harassment in the workplace, among other concerns, remains a relevant interest. "In the public sector, the public interest, welfare, and other pertinent statutory criteria are inherent in the standards that inform and govern public sector arbitration." N.J. Tpk. Auth., 143 N.J. at 198. In the grievance arbitration, Rutgers can ensure these interests are weighed and introduce relevant evidence for the arbitrator's consideration. Additionally, Rutgers' contention that the Title IX Regulations required a decision-maker familiar with Title IX can be addressed by selection of an arbitrator with such training. Local 888's grievance arbitration is limited to J.M.'s termination for just cause and does not nullify that the Rutgers decision-makers found J.M.

sexually harassed the complainant in violation of both the Rutgers Title IX Policy and University Harassment Policy. For these reasons, we discern no error in PERC's final decision.

To the extent not addressed, appellant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2.11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0277-23